# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1813

_____

Children's Broadcasting Corporation,     *
a Minnesota corporation,     *
    *
      Plaintiff - Appellant,     *
    *    Appeal from the United States
      v.     *    District Court for the
    *    District of Minnesota.
The Walt Disney Company, a Delaware     *
corporation; ABC Radio Networks,     *
Inc., a Delaware corporation,     *
    *
      Defendants - Appellees.     *

_____

Submitted: February 16, 2000

Filed: April 10, 2001

_____

Before McMILLIAN, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Children's Broadcasting Corporation appeals from an order of the district court that set aside a jury verdict for Children's on its claims for breach of contract and misappropriation of trade secrets against ABC Radio Networks, Inc. and The Walt Disney Company. The court concluded that Children's had not presented sufficient evidence of causation and damages. In addition to granting judgment as a matter of law for ABC Radio and Disney, the district court granted their alternative motion for a new

trial. We reverse the grant of judgment as a matter of law and affirm the grant of a new trial limited to the issue of damages. We also affirm the district court's pre-trial grant of summary judgment against Children's on four claims.

In the early 1990s, Children's created Radio AAHS, a 24-hour radio format aimed at children age twelve and under and their parents. Also during that time period, ABC Radio considered starting a children's radio network and approached Disney with a proposal. At that time, Disney decided not to go forward.

By 1995, Radio AAHS was reaching around thirty percent of the United States through company-owned and affiliated radio stations. Early that year, Children's solicited ABC Radio to become its strategic partner, and executives from the two companies discussed options. ABC Radio's plan to invest in Children's stalled after Disney announced in July that it was purchasing Capital Cities/ABC, Inc., the parent corporation of ABC Radio. Bob Callahan, the president of ABC Radio, informed Christopher Dahl, the president of Children's, that ABC Radio would not be investing in other companies pending the outcome of the Disney purchase. After waiting a while, Dahl approached ABC Radio to see if the two companies could work out a deal.

In November 1995, Children's and ABC Radio entered into a letter agreement under which ABC Radio agreed to provide certain services for Radio AAHS, including advertising sales, affiliate development, and consulting. Children's agreed to pay ABC Radio $25,000 per month for services plus commissions on advertising sales. Children's also gave ABC Radio a warrant to buy Children's stock. Although ABC Radio agreed that it would not represent any third-party children's radio formats without Children's consent, the contract specifically provided that ABC Radio could represent "any format developed by ABC, its parent, subsidiary or affiliated companies, as constituted now and in the future." Both parties agreed to keep information developed during the term of the agreement confidential and to use this information

only for the purposes of the agreement. The agreement was terminable at will upon ninety days written notice by either party.

Around the same time ABC Radio entered into the agreement, it was considering entering the children's radio field with Disney. In January 1996, the two companies had not yet decided to enter the market, but they continued to make plans for a network called Radio Disney throughout the first half of 1996. Disney acquired Capital Cities/ABC, Inc. on February 6, 1996.

On June 21, 1996, ABC Radio executives David Kantor and Scott McCarthy met with executives of Children's in Minneapolis. Kantor informed them that ABC Radio was considering developing its own children's radio network, and he invited Children's to become a "superaffiliate," carrying Radio Disney programming instead of Radio AAHS programming. Dahl rejected this offer.

On June 27, Callahan sent a memo to Michael Eisner and Michael Ovitz recommending the development of a children's radio network, beginning with a four-month test period of Radio Disney in three markets. By letter dated July 25, ABC Radio notified Children's that it was terminating the contract. The ninety-day notice period expired on October 24, and the Radio Disney test began on November 18. Children's continued to broadcast Radio AAHS until January 1998.

Children's brought this suit on September 26, 1996, alleging a variety of claims, among them fraud, breach of contract, misappropriation of trade secrets, breach of fiduciary duties, and negligent misrepresentation. Children's moved for leave to amend its complaint to seek punitive damages; the district court denied this motion. After discovery, ABC Radio and Disney moved for summary judgment, and the district court granted this motion on all but three claims. These claims (breach of contract for failure to use reasonable efforts to sell advertising and develop affiliates, breach of the

contractual duty of confidentiality, and misappropriation of trade secrets) were tried to a jury in a three-week-long trial.

The jury found that ABC Radio breached the contract with respect to advertising sales and confidentiality and awarded $20 million to Children's for this breach. The jury rejected Children's claim that ABC Radio breached the affiliate development provision of the contract. The jury also found that two of the seven items submitted by Children's as trade secrets were valid trade secrets: a list of Children's advertisers sold and proposed and their rates and Children's techniques and processes for Radio AAHS programming. The jury found that ABC Radio and Disney had misappropriated only the advertiser list, awarding Children's $10 million from ABC Radio and $10 million from Disney on this claim. The jury determined that ABC Radio's breach of contract was not a material breach.[1]

ABC Radio and Disney moved for judgment as a matter of law or, in the alternative, a new trial. The district court found that the evidence supported the jury's finding that ABC Radio breached the contract and that ABC Radio and Disney misappropriated the advertiser list, but concluded that Children's had not presented sufficient evidence of causation or damages.

In reaching its conclusion about causation, the district court discussed primarily the testimony of Stephen Willis, one of Children's experts. It concluded that Willis's testimony was nothing more than speculation; that it lacked any credible analysis to support his causation theory; and that no facts supported his conclusions. The court found that Children's offered no evidence that any particular breach or misappropriation

---

[1]The verdict form included the question of whether ABC Radio's breach was material because Children's owed $91,000 under the contract. If the jury found the breach to be material, Children's performance (and thus the payment) would be excused.

was the direct cause of a specific amount of damages. In addition, according to the district court, Willis failed to address other factors that may have limited the success of Radio AAHS.

The district court further found that Children's failed to present reliable evidence of damages. It concluded that Willis's testimony that Children's was damaged in the amount of $177 million was based on unreliable financial projections that were created with an assumption that Children's would have a long-term relationship with ABC Radio and that did not take into account the fact that Radio AAHS had to compete with Radio Disney. Thus, the court found that Willis's damages projections went so far beyond realistic optimism as to be "fairy-tale-like." The jury had no other evidence on which to base a damage award, according to the district court, and it was forced to resort to speculation and conjecture. The court therefore granted judgment as a matter of law to ABC Radio and Disney.

The district court also granted a conditional new trial on the issues of causation and damages. The district court stated that the reasoning supporting its grant of judgment as a matter of law applied to the motion for new trial, that the findings on causation and damages were unsupported by the evidence, and that the verdict conflicted with the weight of the evidence. It also stated that it had erred by allowing Willis's testimony to stand and that this testimony had tainted the trial, thus requiring a new trial.

## I.

We review a grant of judgment as a matter of law de novo, viewing the evidence in the light most favorable to the nonmoving party while giving that party the benefit of all reasonable inferences. Van Steenburgh v. Rival Co., 171 F.3d 1155, 1158 (8th Cir. 1999). Judgment as a matter of law is warranted only when all the evidence points in one direction and no reasonable interpretations support the jury's verdict. Mears v.

Nationwide Mut. Ins. Co., 91 F.3d 1118, 1122 (8th Cir. 1996); see also Fed. R. Civ. P. 50(a)(1).

The district court upheld the jury's findings of breach and misappropriation, and ABC Radio and Disney do not appeal these determinations. We agree that Children's presented evidence from which a reasonable jury could conclude that ABC Radio breached its contractual duties with respect to advertising sales and confidentiality and that ABC Radio and Disney misappropriated a list of Children's advertisers. We conclude the district court erred, however, by determining that ABC Radio and Disney were entitled to judgment as a matter of law on the issues of causation and damages.[2]

**A.**

Children's presented evidence that ABC Radio's breach of the contract caused damage. Dahl testified that Children's was relying on ABC Radio to sell advertising. Willis testified that ABC Radio's failure to exercise reasonable efforts in advertising sales led to a decline in Children's revenues. Lynne Gross, an expert who testified on Children's behalf, concluded that if ABC Radio failed to perform under the contract, as it related to both affiliate development and advertising sales, Children's would be damaged.

Gross testified regarding her understanding of the "first mover" advantage: when a business is the first of its kind and it gets to a certain level, competitors will have a difficult time unseating it. Her opinion was that Children's had the potential to obtain such an advantage. A memo written by ABC Radio's Bart Catalane to Callahan and Kantor supports this idea: "This market will only support one major player--it's not big

---

[2]The verdict form, the district court's order, and the parties' briefs segregate causation from damages on both the contract claim and the trade secret claim. Our analysis mirrors this segregation.

enough to support two--even Disney. The people who get there first and in the biggest way will win. Radio Aahs has a huge head start." Gross also testified that ABC Radio and Disney were able to accelerate their entry into the market by using information, particularly information about advertising and marketing, they obtained from Children's.

ABC Radio documents show that its executives believed that it could use the deal with Children's to "take control of how we enter or CBC exits the market." An ABC Radio management review of Radio AAHS/Children's prepared by McCarthy discussed the following defensive strategy: "Keep someone else from buying or aligning with CBC. Could be largely accomplished with existing CBC/ABC agreement."

Children's also presented evidence that the misappropriation of its list of advertisers and rates caused damage. Gross testified that information about advertising rates actually charged to a customer was valuable because a competitor could then undersell by a small amount and get the advertiser. The ABC Radio management review prepared by McCarthy discussed Radio AAHS's advertisers: "Several accounts have been developed into significant dollars. However, competing venture could target same accounts with same pitch." Finally, a planning document for Radio Disney asserted that "Radio Disney network spots will be priced aggressively versus AAHS (Radio Disney's spot rates are not projected to reach Radio AAHS'[s] current spot rates until 1999)."

Viewing this evidence in the light most favorable to Children's, we conclude that it supports the jury's finding that the breach of contract and the misappropriation of the advertiser list caused harm to Children's. ABC Radio and Disney were not entitled to judgment as a matter of law on causation.

**B.**

Children's presented evidence that supports the jury's award of damages. Under Minnesota law, damages for breach of contract must be proved to a reasonable certainty, and a party cannot recover speculative, remote, or conjectural damages. Leoni v. Bemis Co., 255 N.W.2d 824, 826 (Minn. 1977); see also Cardinal Consulting Co. v. Circo Resorts, Inc., 297 N.W.2d 260, 266-67 (Minn. 1980). "Once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." Leoni, 255 N.W.2d at 826. Damages for misappropriation of a trade secret "can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss." Minn. Stat. § 325C.03(a) (1998).

The district court found that the only damages evidence offered by Children's was Willis's testimony. To the contrary, the jury had a variety of evidence to consider. Willis himself testified that if there were reasons for the decline in Children's value other than the unlawful conduct of Disney and ABC Radio, adjustments would have to be made to his $177 million calculation. Dahl testified that the market value of Children's at one time was close to $100 million and that ABC Radio valued Children's in the $20 million range. McCarthy stated in the ABC Radio management review that it would cost between $60 million and $90 million to acquire Children's. There were dozens of exhibits in the record before the jury that included Children's revenues and losses (both actual and projected), valuations of Children's assets, and actual and potential advertising sales. The jury's award does not have to match any particular figure in the evidence as long as the award "is within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole." Carroll v. Pratt, 76 N.W.2d 693, 697 (Minn. 1956).

The Minnesota Court of Appeals upheld a jury award of $7,000 where the only damages evidence presented placed the amount at $10,500. Fudally v. Ching Johnson Builders, Inc., 360 N.W.2d 436 (Minn. Ct. App. 1985). The defendant argued that the verdict was not supported by the evidence because nothing specific supported the jury's calculation. Id. at 438-39. The court held that the award "was within the parameters established by the evidence" and that the specificity urged by the defendant was unnecessary to sustain the award. Id. at 439.

The jury was entitled to sort through the evidence presented at trial and to arrive at what it considered to be the damages caused by the conduct it found to be wrongful. In short, there was evidence from which the jury could approximate the amount of damages sustained by Children's. ABC Radio and Disney were not entitled to judgment as a matter of law on damages.

## II.

We review a conditional grant of a new trial for abuse of discretion. Dominium Mgmt. Servs., Inc. v. Nationwide Hous. Group, 195 F.3d 358, 366 (8th Cir. 1999). A motion for a new trial may be

> bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940). The district court must articulate its reasons for granting a new trial to permit meaningful review of its decision. Dominium, 195 F.3d at 366; see also Fed. R. Civ. P. 50(c)(1). "When evidence is erroneously admitted or excluded or where the trial court has erred in the instructions to the jury, the trial court is considered in a better position to correct a

-9-

manifest injustice in ruling on the motion for new trial." Fireman's Fund Ins. Co. v. Aalco Wrecking Co., 466 F.2d 179, 186 (8th Cir. 1972).

Here, the district court gave two reasons for granting a new trial. First, it concluded that "the jury's findings on causation and damages were unsupported by the evidence presented at trial and the verdict conflicts with the weight of the evidence on these issues." Second, it determined that it should have excluded or struck Willis's testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and that this testimony "tainted" the trial by exposing the jury to an "exaggerated sum" of damages.[3]

Had the district court actually excluded Willis's testimony, we would have reviewed its decision for abuse of discretion. See General Elec. Co. v. Joiner, 522 U.S. 136, 138-39 (1997). "When evaluating the admissibility of expert testimony under Federal Rule of Evidence 702, the district court must look to both the relevancy and the reliability of the testimony." Blue Dane Simmental Corp. v. American Simmental Ass'n, 178 F.3d 1035, 1040 (8th Cir. 1999). Here, the district court found that Willis's testimony was unreliable, stating that it was "speculative and based solely on conjecture."

Willis applied an uncontroversial accounting method called discounted cash flow to determine what the value of Children's would have been in the absence of the alleged wrongful conduct. He acknowledged, however, that he did not take into account the announcement of Radio Disney as a competitor when drawing his conclusions. The

---

[3]Before trial, ABC Radio and Disney moved to exclude Willis's testimony under Daubert, on the ground that it was unreliable speculation. The district court denied this motion and overruled the majority of the various objections to Willis's testimony that ABC Radio and Disney made at trial. Only when the district court considered the motion for a new trial did it conclude that it should not have allowed Willis's testimony.

agreement between Children's and ABC Radio did not include a non-compete clause, and the establishment of Radio Disney cannot be considered wrongful conduct. The existence of Radio Disney was relevant to Children's value, but Willis did not consider it. Cf. Blue Dane, 178 F.3d at 1040-41 (where economist used typical method of analysis, but did not consider all independent variables that could affect his conclusion, district court did not abuse discretion by excluding testimony).

Willis's testimony at trial was that any breach of contract, any use of confidential information, or any misappropriation of any trade secret caused the exact same amount of damage to Children's:

> But as a result of my studies, it was my judgment that the damage determination that I made and testified to earlier would be the same regardless of whether some or all of this information was found to have been used and, similarly, with respect to the efforts or lack of efforts regarding the affiliates, the development or lack of development of affiliates or revenues.
> . . . .
> [I]f any one of the items we've talked about--the failure to use reasonable efforts regarding affiliates or the failure to achieve advertising sales or the use of any piece or all of the confidential information, including the trade secrets--were or were not a finding of liability, all you need is any one of them and the damage calculation would be what my determination was.

The assertion that any or all of the alleged wrongful acts would have caused the same outcome is dubious. Children's argues that, under Daubert, a court can review only the methodology of the expert, not his or her conclusions. "But nothing in . . . Daubert . . . requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Joiner, 522 U.S. at 146. Furthermore, Willis based his testimony on a report prepared with the assumption that ABC Radio and Disney had engaged in a variety of wrongful conduct contained in the

-11-

original complaint. Only three counts from the original complaint survived summary judgment, but Willis's damages theory remained the same.

Willis failed to consider the effect of competition on Children's, his theory of causation was questionable, and his testimony was based on a report prepared before Children's claims were narrowed for trial. The district court did not abuse its discretion by concluding that it should have excluded Willis's testimony.

The court found that a new trial was necessary because Willis's testimony tainted the trial. When assessing the impact of improperly admitted evidence, the district court is in the best position to measure the effect on the jury. See Neely v. Martin K. Eby Constr. Co., 386 U.S. 317, 325 (1967) (trial judge has "first-hand knowledge of witnesses, testimony, and issues" and a "'feel' for the overall case"); Fireman's Fund, 466 F.2d at 186. Cf. United States v. Wilkins, 139 F.3d 603, 604-05 (8th Cir. 1998) (in criminal case, district court in best position to judge whether evidence regarding dismissed charges tainted jury's consideration of another count). Even though the jury did not award $177 million, the damages amount to which Willis testified, the jury's award of $20 million to Children's for breach of a contract that was terminable at will with ninety days notice suggests to us that Willis's testimony gave the jury an unrealistic idea of the appropriate measure of damages.[4] The district court's discussion of Willis's testimony supports its grant of a new trial on the issue of damages, and we affirm on that issue.

---

[4]When a breaching party has the power to terminate a contract upon notice, the general rule is that the calculation of damages is limited to the notice period. See Western Oil & Fuel Co. v. Kemp, 245 F.2d 633, 638-42 (8th Cir. 1957); Pappas v. Stark, 142 N.W. 1046, 1048 (Minn. 1913); 3 E. Allan Farnsworth, Farnsworth on Contracts 150 (2d ed. 1998).

The district court did not suggest, however, that Willis's testimony tainted the causation findings. Although the court concluded that "the jury's findings on causation . . . were unsupported by the evidence presented at trial" when articulating its first reason for granting a new trial, our discussion in Section I of this opinion demonstrates that evidence other than Willis's testimony supported a finding that the breach of contract and the trade secret misappropriation caused some damage to Children's. On numerous occasions, we have made clear that the district court has a duty to articulate its reasons for overturning the jury's verdict when it grants a conditional motion for a new trial on the ground that the verdict is against the weight of the evidence. E.g., Dominium, 195 F.3d at 366; White v. Pence, 961 F.2d 776, 781 (8th Cir. 1992). The district court's summary conclusion that the verdict on causation conflicted with the weight of the evidence is insufficient to support the grant of a new trial on this issue. See Stafford v. Neurological Med., Inc., 811 F.2d 470, 474 (8th Cir. 1987).

## III.

Children's asks us to reconsider several claims on which the district court granted summary judgment before trial. We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party and upholding summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wayne v. Genesis Med. Ctr., 140 F.3d 1145, 1147 (8th Cir. 1998) (per curiam); Fed. R. Civ. P. 56(c).

## A.

Children's argues that the district court erred by granting summary judgment on its negligent misrepresentation claim. A required element of this claim "is that the alleged misrepresenter owes a duty of care to the person to whom they are providing information." Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424 (Minn. Ct. App. 2000). Under Minnesota law, no duty of care exists between sophisticated equals

negotiating a business transaction unless the parties have a special relationship. Id. at 424-25; see also Safeco Ins. Co. of Am. v. Dain Bosworth Inc., 531 N.W.2d 867, 871-72 (Minn. Ct. App. 1995). Because there is no evidence that ABC Radio and Children's had a special relationship, ABC Radio owed no duty of care to Children's. The claim for negligent misrepresentation necessarily fails.

## B.

Children's argues that the district court erred by granting summary judgment on its fraud claim. Under Minnesota law, the elements of fraud are the making of

> a false representation of a past or existing material fact, susceptible of knowledge, knowing it to be false or without knowing whether it was true or false, with the intention of inducing the person to whom it was made to act in reliance upon it or under such circumstances that such person was justified in so acting and was thereby deceived or induced to so act to his damage.

Berryman v. Riegert, 175 N.W.2d 438, 442 (Minn. 1970).

Children's alleges that ABC Radio represented that it would enter the children's radio market only with Children's and that Disney had no intention of entering the market. The evidence cited by Children's to support its claim that someone at ABC Radio made these representations is scant. At his deposition, Dahl testified that Kantor said that ABC and Disney would not enter the children's radio market without Children's. At trial, however, Dahl testified that Kantor never said that ABC and Disney would not independently pursue children's radio. Dahl also testified that Callahan said that ABC Radio wanted to try children's radio with Children's, "And if it doesn't work with you, we're going to probably--not probably. I think he said we're going to abandon our efforts." Dahl's deposition testimony calls this trial testimony into question. At his deposition, he stated that he could not remember anyone other than

Kantor assuring that ABC Radio and Disney would not enter the children's radio market. Dahl's inconsistent testimony does not create a genuine issue of material fact.

This leaves only the testimony of Lance Riley, the in-house attorney for Children's. At his deposition, he testified that a person from ABC Radio whom he believed to be Kantor said that there would be no point in entering into the agreement with Children's if ABC Radio intended to compete with Children's. Riley clarified that no one at ABC Radio said that it would not compete after the term of the agreement. We cannot conclude that this evidence sufficed to create a genuine issue on the first element of a fraud claim: the making of a false representation.

Furthermore, even if the evidence supported Children's contentions that ABC Radio represented that neither it nor Disney would enter the children's radio market, Children's would not have been justified in relying on these representations. Fraud must be proved with reference to the specific intelligence and experience of the party alleging it. Murphy v. Country House, Inc., 240 N.W.2d 507, 512 (Minn. 1976). A memo written by Jim Gilbertson of Children's indicates that Children's was well aware that ABC Radio and Disney might enter the children's radio market. Also, there is no indication that Children's actually relied on any such representations. At trial, Dahl was asked why he considered it unlikely that Disney and ABC Radio would enter the market without Children's, and he responded, "Well, number one, we had the contract with ABC. And I regarded that as an extremely important document that would prevent them from doing that." He did not say that someone represented that ABC Radio and Disney would not enter the market. The agreement on which Dahl purported to rely does not contain a non-compete clause. In fact, its language seems to contemplate that ABC Radio or Disney, its future parent, might develop a children's radio format: "Nothing herein shall be deemed to prevent ABC from representing or selling national advertising time in connection with any format developed by ABC, its parent, subsidiary or affiliated companies, as constituted now and in the future." (emphasis

added.)  Cf. Henvit v. Keller, 15 N.W.2d 780, 782 (Minn. 1944) (element of reliance lacking where written stipulations of lease contradicted alleged representations).

Children's further claims that ABC Radio's representations that it would keep information confidential and use reasonable efforts to perform were fraudulent. "[U]nder Minnesota law, a representation or expectation of future events is not sufficient to support an action for fraud simply because the represented act or event did or did not take place."  Exeter Bancorporation, Inc. v. Kemper Sec. Group, Inc., 58 F.3d 1306, 1313 (8th Cir. 1995).  A misrepresentation of a present intention to do something in the future could constitute fraud if there is affirmative evidence that the promisor had no intention of keeping the promise at the time it was made.  Id. at 1312. Because Children's offers no evidence that ABC Radio did not intend to perform when it entered into the agreement, its allegations do not support a claim for fraud independent of the breach of contract claim.

Children's also alleges that ABC Radio failed to disclose several facts:  its discussions with Disney about creating a children's radio network, its intention to use the contract as paid education, and its "self-serving" interpretation of the confidentiality clause.  "The general rule is that one party to a transaction has no duty to disclose material facts to the other."  L & H Airco, Inc. v. Rapistan Corp., 446 N.W.2d 372, 380 (Minn. 1989) (internal quotation omitted).  A duty may exist when a fiduciary relationship exists between the parties, when disclosure is necessary to clarify information previously disclosed, or when one party has special knowledge of material facts to which the other does not have access.  Id.  The third situation is the only one that may apply here, and the Minnesota Supreme Court has "rarely addressed that particular theory of fraud."  Id.

Children's claim that ABC Radio should have disclosed its interpretation of the confidentiality provision makes little sense.  We see no support in Minnesota law for imposing a duty on sophisticated parties negotiating a contract at arms' length to

-16-

disclose their particular interpretations of its provisions. With regard to the remaining two alleged nondisclosures, ABC Radio had no "special knowledge" that it should have imparted to Children's. Children's was aware that ABC Radio and Disney might form a competing network, and it was also aware that ABC Radio would learn about children's radio through the agreement.

The district court did not err in granting summary judgment against Children's on its fraud claim.

## C.

Children's alleges that ABC Radio acted as its agent, that it had fiduciary duties to Children's, and that it breached these duties. Although the existence of an agency relationship is generally a question of fact, summary judgment may be appropriate if the evidence is conclusive. Smith, 605 N.W.2d at 423. "[B]efore a court will impose a legal obligation on a person to act like an agent, the plaintiff must first introduce factual evidence that he sought this arrangement and that the alleged agent consented to it." PMH Props. v. Nichols, 263 N.W.2d 799, 803 (Minn. 1978). See also Nerlund v. Schiavone, 84 N.W.2d 61, 65 (Minn. 1957) ("No one can become the agent of another without the consent, either express or implied, of the principal."). Neither Children's nor ABC Radio consented to a principal-agent relationship. In fact, they expressly disclaimed any such relationship in their contract:

> Nothing contained in this Agreement shall create or be deemed to create any association, partnership, joint venture or the relationship of principal and agent or employer and employee between the parties hereto, it being understood that ABC and CBC shall perform all of their obligations hereunder as fully independent parties.

This disclaimer binds Children's and precludes its claim for breach of fiduciary duties. Cf. Board of Trade v. Hammond Elevator Co., 198 U.S. 424, 437 (1905) (implying that

express disclaimer of principal-agent relationship would be decisive between the parties involved in the disclaimer); <u>Norsul Oil & Mining Co. v. Texaco, Inc.</u>, 703 F. Supp. 1520, 1545-46 (S.D. Fla. 1988); <u>Wardley Corp. v. Welsh</u>, 962 P.2d 86, 89 (Utah Ct. App. 1998).  Summary judgment on this claim was appropriate.

**D.**

Children's argues that the district court erred by granting summary judgment on its claim that ABC Radio breached the contract's research provision.  This provision provides:  "Upon request, ABC shall assist CBC in working with Arbitron, Radar and other research companies to refine and further develop measurement methodologies for CBC's audience."  William McClenaghan, the person at ABC Radio who was responsible for responding to Children's research requests, stated in his affidavit:  "CBC never made any requests to me to assist CBC in working with Arbitron, Radar or other research companies to refine and further develop measurement methodologies for CBC's audience."

Children's directs us to McClenaghan's deposition testimony, where he stated, "AAHS wanted to go out and do more audience surveys, and I said that is not the way to go."  Children's also cites Gilbertson's deposition testimony, where he was asked, "[D]o you know if anybody at CBC ever made a request to ABC to work with any of the research companies to refine and further develop measurement methodologies for CBC's audience?"  Gilbertson responded, "Again, I just don't recall if we asked in that context.  It's possible. . . .  I don't recall.  I know I asked Mr. McClenaghan basically for his aid in research."  Gilbertson was then asked, "Did you ask him to assist you to refine or develop measurement methodologies for CBC's audience?"  His response was, "I don't recall whether we did or not.  I just don't recall if we asked that specific question."  This testimony does not raise a genuine issue regarding whether Children's asked ABC Radio to assist it in the specific way contemplated by the contractual

-18-

provision. Without such a request, there could be no breach. The district court did not err by granting summary judgment against Children's on this claim.

## IV.

Finally, Children's argues that the district court erred by barring it from seeking punitive damages on its commercial tort claims. In light of our disposition of these claims in Section III, we need not address this argument. We reverse the district court's grant of judgment as a matter of law and remand the case for a new trial limited to damages.[5]

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]Our opinion should not be read to imply that the conduct that the jury found wrongful caused any particular type of damage to Children's or that Children's is entitled to any particular amount of damages.