# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-3161/3310

_____

Children's Broadcasting Corporation,   *
a Minnesota corporation,   *
  *
    Appellee/Cross-Appellant,   *
  *  Appeals from the United States
v.   *  District Court for the
  *  District of Minnesota.
The Walt Disney Company, a   *
Delaware corporation; ABC Radio   *
Networks, Inc., a Delaware corporation,   *
  *
    Appellants/Cross-Appellees.   *

_____

Submitted: June 12, 2003

Filed: January 26, 2004

_____

Before LOKEN, Chief Judge, HEANEY and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Children's Broadcasting Company (Children's) sued ABC Radio Networks, Inc. (ABC Radio) and The Walt Disney Company (Disney) for breach of contractual duties to sell advertising and to maintain confidentiality and for misappropriation of a trade secret. The case was tried to a jury, which awarded Children's $1.5 million for breach of contract, and $8 million for breach of the contractual duty of confidentiality and misappropriation of the trade secret. ABC Radio and Disney

appeal (1) the district court's[1] denial of their motion for judgment as a matter of law or, alternatively, for new trial; and (2) the award of prejudgment interest to Children's. Children's cross appeals, claiming the district court erred (1) in narrowing the scope of Children's confidentiality claim solely to the misappropriated trade secret; and (2) by not awarding Children's exemplary damages and attorney fees. We affirm.

## I.    BACKGROUND

This case, involving a letter agreement between Children's and ABC Radio (ABC Radio was later acquired by Disney), is before our court for a second time. In the previous appeal, our court held the district court erred in granting judgment as a matter of law in favor of ABC Radio and Disney on the issue of causation. Children's Broad. Corp. v. The Walt Disney Co., 245 F.3d 1008, 1013, 1016 (8th Cir. 2001). We determined the evidence was sufficient to support the jury's finding that the breach of contract and the misappropriation of an advertiser list caused harm to Children's. Id. at 1016. We also ruled evidence was presented from which the jury could approximate Children's damages. Id. at 1017. We affirmed the district court's conditional grant of a new trial, because the district court did not abuse its discretion in finding the testimony of one of Children's experts should have been excluded. Id. at 1018-19. We remanded the case for a new trial on the limited issue of damages. Id. at 1022.

Our previous decision thoroughly discusses the underlying facts of this case, and we refer our reader to that decision for the details. Hereafter, we discuss only the facts most pertinent to this second appeal.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

At the retrial on damages, Children's presented evidence ABC Radio and Disney had "accelerated" their entry into the children's radio market by using information about advertising and marketing they obtained from Children's and its children's radio network, Radio AAHS. The jury awarded Children's (1) $1.5 million on the breach of contract claim for ABC Radio's failure to make reasonable efforts to sell advertising and to develop affiliates for Children's radio network, i.e., Radio AAHS; and (2) $8 million for breach of the contractual duty of confidentiality and the misappropriation of information about Children's advertisers and potential advertisers contained in a document identified as PX217. The district court denied ABC Radio's and Disney's motion for judgment as a matter of law on the $8 million award or, alternatively, for a new trial. Children's moved for entry of judgment to include prejudgment interest and exemplary damages. The district court awarded Children's prejudgment interest totaling $2,567,082.19, and denied Children's request for exemplary damages and attorney fees. The district court entered a $9.5 million judgment for Children's with $2,567,082.19 in interest.

## II.  DISCUSSION
### A.  Judgment as a Matter of Law
#### 1.  Standard of Review

ABC Radio and Disney argue the district court erred in denying their post-trial motion for judgment as a matter of law. "We review de novo the district court's denial of [a] post-verdict motion for judgment as a matter of law." Racicky v. Farmland Indus., Inc., 328 F.3d 389, 393 (8th Cir. 2003). We are required to decide whether or not the record contains evidence sufficient to support the jury's verdict. Id. In doing so, "we must examine the sufficiency of the evidence in the light most favorable to [Children's] and view all inferences in [its] favor." Id. (citation omitted). "Judgment as a matter of law is appropriate only when all of the evidence points one way and is susceptible of no reasonable inference sustaining [Children's] position." Id. (citation omitted).

### 2. Evidence Supporting Verdict

ABC Radio and Disney argue the evidence Children's presented regarding damages due to misappropriation of PX217 does not support the verdict. ABC Radio and Disney contend (1) the theories of Dr. Jonathan Putnam (Dr. Putnam), the damages expert witness for Children's, were unfounded and speculative; (2) Dr. Putnam considered evidence outside PX217 in reaching his conclusions; and (3) Dr. Putnam could not identify the proper "acceleration" intervals of ABC Radio's and Disney's entry into the market. ABC Radio and Disney contend they provided the only competent evidence regarding any acceleration interval. ABC Radio and Disney argue Children's damages were improperly based upon projected profits rather than actual results. Finally, ABC Radio and Disney assert Children's did not show evidence of any actual use of PX217.

### a. Dr. Putnam's Testimony

"We review under an abuse of discretion standard a district court's ruling admitting expert witness testimony under Rule 702." Bonner v. ISP Techs., Inc., 259 F.3d 924, 928 (8th Cir. 2001). "Where the district court errs in admitting evidence, we will only grant a new trial or set aside a verdict if there is a clear and prejudicial abuse of discretion." Lovett ex rel. Lovett v. Union Pac. R.R. Co., 201 F.3d 1074, 1080 (8th Cir. 2000).

Dr. Putnam offered a theory regarding ABC Radio's and Disney's accelerated entry into children's radio. The jury could have used all or some or none of Dr. Putnam's various acceleration intervals (eleven months to two years) as benchmarks to calculate the appropriate amount of damages, depending on the jury's findings regarding the amount of acceleration resulting from ABC Radio's and Disney's conduct. In calculating the various intervals, Dr. Putnam considered evidence, including two ABC Radio documents, regarding the length of time it would take to launch a children's radio network. Dr. Putnam accepted Children's testimony that Children's took about 3 years to acquire the information in PX217. Dr. Putnam relied

on documents from ABC Radio and Disney saying the research and development Children's had done, though not specifically referring to the information in PX217, would avoid ABC "pumping $30 to $40 million into this business and taking 2 or 3 years of sizable start-up losses." One of the same documents also noted Children's had "built a brand and an asset in this area" and it would take ABC Radio a while to build up such research and development on its own.

Dr. Putnam provided dollar amounts to the jury of the increased value of ABC Radio and Disney based on three acceleration intervals–eleven months, twelve months, and twenty-four months–to which Dr. Putnam assigned the values of $35 million, $37 million, and $54 million. Although Dr. Putnam did not testify as to the exact length of the acceleration interval, he did state the length of the acceleration interval would be determined by the time needed to recreate the information. As to the time for recreating the information, Jane Steinberg, Vice President of Syndicated Programming and Internet Sales for ABC Radio, testified she could recreate the information on PX217 in less than a week, but Children's Marketing Manager, Rick Smith, testified it took four years to develop Radio AAHS and having the information would save a competitor a significant amount of time. An ABC Radio senior management review in January 1996 estimated ABC could "get to the same stage of development, in a reasonably short period of time (6-18 months)."

The district court stated it was satisfied with Dr. Putnam's credentials for valuing trade secrets, and Dr. Putnam used an accepted academic methodology. The court found Dr. Putnam's testimony relevant and reliable under Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999). The court concluded ABC Radio's and Disney's objections to Dr. Putnam's opinion were better directed to the weight of the testimony rather than admissibility. Finally, the district court found the defendants had a full opportunity to cross-examine Dr. Putnam and could have presented expert testimony to rebut Dr. Putnam's assertions.

In the prior appeal, our court upheld the causation finding based partly upon an expert's opinion that "ABC Radio and Disney were able to accelerate their entry into the market by using information, particularly information about advertising and marketing, they obtained from Children's." Children's, 245 F.3d at 1016. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Bonner, 259 F.3d at 929-30 (quoting Hose v. Chicago N.W. Transp. Co., 70 F.3d 968, 974 (8th Cir. 1996)). ABC Radio and Disney failed to show Dr. Putnam's opinion was so unsupported that his testimony could offer no assistance to the jury. We find the district court did not abuse its discretion in admitting Dr. Putnam's testimony.

### b. Other Evidence

"Under Minnesota law, damages for breach of contract must be proved to a reasonable certainty, and a party cannot recover speculative, remote, or conjectural damages." Children's, 245 F.3d at 1016 (citing Leoni v. Bemis Co., 255 N.W.2d 824, 826 (Minn. 1977)). Instead, "[o]nce the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." Id. (quoting Leoni, 255 N.W.2d at 826). Further, "[d]amages for misappropriation of a trade secret 'can include both the actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.'" Id. (quoting Minn. Stat. § 325C.03(a)). "The jury's award does not have to match any particular figure in the evidence as long as the award 'is within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole.'" Id. at 1017 (quoting Carroll v. Pratt, 76 N.W.2d 693, 697 (Minn. 1956)).

Smith testified Children's took four years to develop Radio AAHS, and the information in PX217 would save a competitor a "significant amount of time" in entering the children's radio market. Children's Chief Operating Officer, James Gilbertson, said the information contained in PX217 was not available to competitors and would be useful to competitors. For example, PX217 disclosed Children's rates and what advertising particular clients were buying.

Children's also presented documents from ABC Radio showing the importance of moving quickly to launch Radio Disney, including a document entitled "Competitive Response to Radio AAHS," demonstrating ABC Radio and Disney knew the value of quick entry into the children's radio market. Another letter from ABC Radio's Scott McCarthy to Lynn Kesterson-Townes, Disney's Director of Strategic Planning and Development, also cites the importance of moving quickly, stating: "For competitive reasons, I think it is essential to complete these steps and make a decision on this business segment within the next 45-60 days," and noting further "there is probably only room for one radio network focused on kids' radio." After Radio Disney was implemented, James Pastor, Vice President of Sales and Marketing for Radio Disney, testified Radio Disney had been successful. Children's introduced a letter from Disney President Michael Eisner to shareholders reporting, "[b]y any measure, Radio Disney is a success." Another Radio Disney document projected advertising revenue in 1998 at approximately $8 million.

Evidence was presented that ABC Radio and Disney accelerated their entry into the market by using information contained in PX217. Gilbertson testified ABC Radio specifically requested the information contained in PX217. ABC Radio's Bob Callahan explained in an e-mail memorandum to ABC Radio's Jim Arcara that, if ABC Radio entered the kids' radio market with Disney, ABC could use the agreement with Children's "as paid education [and] exploit [Children's] affiliate base." ABC's Executive Vice President, Bart Catalane, noted in a fax to ABC's David Kantor that the agreement with Children's could be used as "'[p]aid tuition' – ABC gets paid to

learn the business from the inside with zero risk" and could allow ABC to "take control of how we enter or [Children's] exits the market." Finally, in an April 24, 1996 Disney business plan draft or "deck" planning Radio Disney, Disney noted (1) "Because there is advertising 'room' for only one 24 hour children's radio format in a market, Radio Disney will have to overcome Radio AAHS' lead in 26 markets, representing roughly 34% of U.S. households," and (2) "Radio Disney network spots will be priced aggressively versus [Radio] AAHS (Radio Disney's spot rates are not projected to reach Radio AAHS' current spot rates until 1999.)" PX217 information actually showed up in this Disney April 24, 1996 "deck." See Surgidev Corp. v. Eye Tech., Inc., 828 F.2d 452, 456 (8th Cir. 1987) (recognizing the Minnesota law inference: "[t]he fact that defendants have exhibited an intention to use this information . . . is circumstantial proof of its value.") (alteration in original); see also Shelden v. Barre Belt Granite Employer Union Pension Fund, 25 F.3d 74, 79 (2d Cir. 1994) (declaring "[i]t is well settled that the existence of a plan to do a given act is relevant to show that thereafter the act was in fact done").

### 3. Sufficiency of Evidence

Disney's and ABC Radio's arguments regarding the sufficiency of the evidence largely focus on the testimony of Dr. Putnam. That the jury did not return a verdict precisely equivalent to the amounts provided by Dr. Putnam's testimony is immaterial. See Sch. Dist. No. 11 v. Sverdrup & Parcel and Assoc., 797 F.2d 651, 654 (8th Cir. 1986).[2] As we stated in the previous appeal, "[t]he jury was entitled to sort through the evidence presented at trial and to arrive at what it considered to be the damages caused by the conduct it found to be wrongful. In short, there was evidence from which the jury could approximate the amount of damages sustained by Children's." Children's, 245 F.3d at 1017. At the second trial, the jury sorted through the evidence and arrived at a figure "within the parameters established by the

---

[2]Hubert H. Humphrey said, "The right to be heard does not automatically include the right to be taken seriously."

evidence." Id. (quoting Fudally v. Ching Johnson Builders, Inc., 360 N.W.2d 436, 439 (Minn. Ct. App. 1985)). The district court did not err in denying the motion for judgment as a matter of law.

### B. New Trial
#### 1. Standard of Review

ABC Radio and Disney contend the district court erred in denying their motion for a new trial, claiming (1) the verdict was against the weight of the evidence, (2) the district court erred in permitting Dr. Putnam to testify, and (3) the district court erred in refusing to give certain jury instructions. "The denial of motion for a new trial under Fed. R. Civ. P. 59(a) is reviewed with great deference to the district court's ruling and will not be reversed in the absence of a clear abuse of discretion." Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). "When the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal." Jones v. Swanson, 341 F.3d 723, 732 (8th Cir. 2003) (internal quotations omitted).

#### 2. Evidence Presented
#### a. Weight of Evidence and Dr. Putnam's Testimony

We have already addressed ABC Radio's and Disney's contentions the jury's verdict was against the greater weight of the evidence and the district court erred in allowing Dr. Putnam to testify. "After a thorough review of the record, we are persuaded that [ABC Radio and Disney] failed to make the strong showing of abuse of discretion that is required." Barnes v. Parker, 972 F.2d 978, 980 (8th Cir. 1992). Children's presented ample evidence to support the jury's verdict. Dr. Putnam was qualified to testify as an expert on Children's trade secret damages, and the defendants had an opportunity to cross-examine him, present evidence to rebut his testimony, and argue in summation all of the inadequacies of Dr. Putnam's qualifications, credibility, methodology, and opinions. Even assuming the district court erroneously admitted certain evidence, the evidence was not so prejudicial that

a new trial would necessarily produce a different result.  See Wheeler v. Mo. Hwy. & Transp. Comm'n, 348 F. 3d 744, 749 (8th Cir. 2003).  We conclude the district court did not abuse its discretion in finding substantial evidence supported the jury's award.

### b.    Jury Instructions

Next, ABC Radio and Disney argue the district court erred in declining to include several jury instructions related to the materiality of the breach, the lack of fiduciary duties, the absence of fraud, and the purpose of the contract.  ABC Radio and Disney requested these instructions because, as they contend, these instructions were the established law of the case. "The standard for reviewing alleged errors in jury instructions is whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately submitted the issues in the case to the jury." Jones, 341 F.3d at 734.  "The form and language of jury instructions are committed to the sound discretion of the district court so long as the jury is correctly instructed on the substantive issues in the case." Id.  "This court will reverse on the basis of instructional error only if it finds the error affected the substantial rights of the parties." Id.

Instruction Number 13 informed the jury of the first jury's findings and limited the scope of the second jury's role to determining the amount of Children's damages.[3]

---

[3]Instruction Number 13 stated:

As you know, this case has already been tried once, and many of the issues have already been decided.  I told you at the beginning of the trial what the first jury found, and as I explained to you then, those findings are still valid.  Those findings were as follows:

First, the jury found that ABC breached the November 17, 1995 contract by failing to "use reasonable efforts to sell commercial spots for the [Radio AAHS] format in the same manner as sales are conducted for

Instruction Number 14 cautioned the jury:

> The November 17, 1995, contract between Children's and ABC did not restrict ABC and Disney's right to compete against Children's. The establishment of Radio Disney cannot be considered wrongful conduct.
>
> ABC did not breach any other provision of the contract with Children's other than the duty to use reasonable efforts to sell advertising and the duty of confidentiality with respect to Plaintiff's Exhibit # 217. Any other claims for breach of contract or other wrongdoing were rejected by the first jury.

During the course of the trial, the district court gave curative instructions and reminded the jury the issue before it was damages, not the issues of liability, fault, or

---

> sale of ABC's commercial inventory for its programs."
>
> Second, the jury found that ABC breached the provision of the November 17, 1995 contract which required ABC to keep Plaintiff's Exhibit # 217 "confidential and . . . [to] use such information only for the purposes contemplated by [the contract]."
>
> Third, the jury found that ABC and Disney misappropriated Children's trade secret, Plaintiff's Exhibit # 217.
>
> Fourth, the jury found that these breaches and misappropriation directly caused harm to Children's.
>
> For purposes of this trial, the first jury's findings are settled and conclusive, and you are not to second-guess those findings. Your role is to determine the amount of damages to which Children's is entitled as compensation.

(alternations in original).

causation. The court also instructed the jury to disregard any allegations of other types of wrongful conduct outside the claims of misappropriation, breach of contract, and the duty to maintain confidentiality.[4]

The district court concluded the materiality of the breach was irrelevant in the retrial, negating the need for an instruction on that issue. The district court also ruled the issues of the absence of a special relationship between the parties, the lack of fiduciary duties, the absence of fraud, and the purpose of the contract were irrelevant in the retrial. The district court noted it attempted to define narrowly the issues for the second jury through the curative instructions. What was relevant was what damages proximately resulted from the two principal wrongs found by the first jury. Taken as a whole, the jury instructions "fairly and adequately submitted the issues . . . to the jury." Id. ABC Radio and Disney have not shown how the failure to give their proposed instructions affected ABC Radio's and Disney's substantial rights. Any error that may have occurred in instructing the jury was cured by the district court's curative instructions. We find no error in the instructions provided the jury, and the district court did not abuse its discretion in refusing to give the proposed instructions or by denying the motion for a new trial.

### C.    Prejudgment Interest

ABC Radio and Disney appeal the district court's award of prejudgment interest. ABC Radio and Disney claim (1) Children's was awarded future damages, and (2) the amount of damages was not liquidated and readily ascertainable. "We review the district court's ruling on prejudgment interest for an abuse of discretion." R & B Appliance Parts, Inc. v. Amana Co., 258 F.3d 783, 787 (8th Cir. 2001). However, the question of "[w]hether the district court had authority to grant

---

[4]The district court cautioned the jury during the trial stating, "any other allegations that might have been made about any other type of wrongful conduct or anything else that had been mentioned are not for your consideration and may not be used by you to assess damages against the defendant."

prejudgment interest is a question of state law which we review de novo." Transit Cas. Co. v. Selective Ins. Co. of the S.E., 137 F.3d 540, 546 (8th Cir. 1998).  Because this is a diversity action, Minnesota law controls the award of prejudgment interest. See Berglund v. State Farm Mut. Auto. Ins. Co., 121 F.3d 1225, 1230 (8th Cir. 1997).

Minnesota law provides:

> Except as otherwise provided by contract or allowed by law, preverdict, preaward, or prereport interest on pecuniary damages shall be computed . . . from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first, except as provided herein.

Minn. Stat. Ann. § 549.09(1)(b) (West Supp. 2004).  One limiting exception to this general rule is that prejudgment interest is not available on "judgments or awards for future damages."  Id. § 549.09(1)(b)(2).

### 1.    Future Damages

Instruction Number 16 expressly stated, "damages for breach of the contract must be limited to those suffered on or before October 24, 1996."  The discounted cash flow model Dr. Putnam presented allowed the jury to calculate the net current value of damages rather than damages likely to occur in the future.  Dr. Putnam used the discounted cash flow method to determine the extent to which ABC Radio and Disney had been unjustly enriched.  Dr. Putnam projected two revenue streams.  One revenue stream was the future cash flows Radio Disney would have received if it had not misappropriated Radio AAHS's materials or breached the confidentiality agreement.  The second revenue stream was Radio Disney's future cash flows with the benefit of the material Radio Disney misappropriated and used in violation of the confidentiality agreement.  Dr. Putnam discounted both revenue streams to arrive at Radio Disney's present value had ABC Radio and Disney not misappropriated or breached the confidentiality agreement as well as Radio Disney's value due to its

misappropriation and breach of the confidentiality agreement. The difference between the two values allegedly constitutes the amount ABC Radio and Disney were unjustly enriched.

Future damages mean damages for future loss. In this case, the jury was properly instructed, and Dr. Putnam used future earnings to determine the current (as of October 24, 1996) value of the loss caused by the wrongful acts of ABC Radio and Disney. Therefore, the district court properly granted prejudgment interest on the value of the present loss.

### 2. Readily Ascertainable

ABC Radio and Disney also claim the district court erred in awarding prejudgment interest, because the damages awarded Children's were not liquidated or readily ascertainable. In interpreting section 549.09, this court previously explained the status of Minnesota law: "Prior to 1984, prejudgment interest was allowed on an unliquidated claim only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value." Simeone v. First Bank Nat'l Ass'n, 73 F.3d 184, 191 (8th Cir. 1996). We then noted, "In 1984, however, § 549.09 was amended to provide that '[t]he prevailing party shall receive interest on any judgment or award.'" Id. (quoting Minn. Stat. Ann. § 549.09) (alternations in original). We concluded, "The amended statute allows prejudgment interest 'irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable.'" Id. (quoting Lienhard v. State, 431 N.W.2d 861, 865 (Minn. 1988)).

ABC Radio and Disney contend the Lienhard ruling was dicta. However, the Minnesota Court of Appeals has squarely rejected this argument:

Lienhard thus considered and decided the question of the continued applicability of the ascertainability rule in a context where the issue was

-14-

necessary to the holding in the case. Because the supreme court has held that preverdict interest is available "irrespective of a defendant's ability to ascertain the amount of damages," we conclude that post-<u>Lienhard</u> cases that apply the ascertainability rule . . . are incorrect.

<u>Myers v. Hearth Tech., Inc.</u>, 621 N.W.2d 787, 794 (Minn. Ct. App. 2001) (quoting <u>Lienhard</u>, 431 N.W.2d at 865) (citations omitted). We conclude the district court did not err in awarding prejudgment interest to Children's.

### D. Exemplary Damages and Attorney Fees

Children's asserts the district court erred in refusing to award Children's exemplary damages and attorney fees. We review the district court's decision not to award exemplary damages for abuse of discretion. <u>See</u> <u>Rupp v. Omaha Indian Tribe</u>, 45 F.3d 1241, 1246 (8th Cir. 1995). We also review the district court's denial of attorney fees for abuse of discretion. <u>Allied Sys. Ltd. v. Teamsters Auto. Transp. Chauffeurs</u>, 304 F.3d 785, 792 (8th Cir. 2002).

The Minnesota Trade Secrets Act allows a court to award exemplary damages in an amount up to double the actual damages "[i]f willful and malicious misappropriation exists." Minn. Stat. Ann. § 325C.03(b). Also, if "willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Minn. Stat. Ann. § 325C.04(iii). As the district court realized, "there was not a finding of 'willful and malicious' conduct by the first jury. The remand from the Eighth Circuit was for a 'new trial limited to damages.'" The district court correctly found the "issue of whether Defendants' conduct rose to the level of 'willfulness and maliciousness' is a liability question and beyond the scope of the limited remand." Based upon our review of the record in this case, we find no error and no abuse of discretion in the district court's denial of exemplary damages or denial of attorney fees for willful and malicious conduct.

**E.     Scope of Trial on Remand**

Children's also claims the district court erred in narrowing the scope of Children's breach of confidentiality claims by only permitting Children's to introduce evidence regarding damages for misuse of PX217.  Children's explains it "does not request yet another remand of this case for another damages trial solely to address this error."   Instead, Children's states, "if the Court were to remand the case in light of Defendants' meritless arguments, any such remand should allow Children's to recover the full amount of damages for Defendants' breaches of their confidentiality obligation under the contract as determined in the liability trial."  Because our court will not remand the matter for a new trial on damages, as Children's concedes, this issue is moot.


**III.     CONCLUSION**

We affirm in all respects.

_____