Michael H. SMITH, et al., Appellants (C8–99–941), Respondents (C5–99–945),

v.

WOODWIND HOMES, INC., Defendant,

State Bank of Hamburg, Respondent,

Bradley W. Solheim d/b/a Carver County Title Guaranty, et al., Defendants (C8–99–941), Appellants (C5–99–945),

Al Wallin, Carver County Sheriff (in his official capacity), et al., Defendants.

Nos. C8–99–941, C5–99–945.

Court of Appeals of Minnesota.

Feb. 8, 2000.

Katherine M. Bergenthal, Eric R. Heiberg, Coleman, Hull & Van Vliet, P.L.L.P., Minneapolis, MN (for appellants Michael H. Smith, et al., C8–99–941).

Ronald E. Martell, John M. Harens, Moore, Costello & Hart, P.L.L.P., Minneapolis, MN (for appellants Bradley W. Solheim, d/b/a Carver County Title Guaranty, et al., C5–99–945).

Brian A. Martens, Parsinen, Kaplan, Levy, Rosberg & Gotlieb, P.A., Minneapolis, MN (for respondent State Bank of Hamburg).

Considered and decided by
SHUMAKER, Presiding Judge,
LANSING, Judge, and HALBROOKS,
Judge.

## OPINION

HALBROOKS, Judge.

In these consolidated actions arising from a real-estate closing for the sale of a new home, appellants, Michael and Andrea Smith and Carver County Title Guaranty Company (CCTG), challenge the district court's issuance of summary judgment against them. CCTG alleges (1) the district court improperly made factual findings and drew unfavorable factual inferences against CCTG; (2) application of the statute of frauds is inappropriate because they are entitled to invoke: (a) equitable estoppel; (b) promissory estoppel; (c) performance of an oral agreement; and (d) partial payment of the underlying debt; (3) even if a contract existed, sufficient circumstantial evidence was presented to modify it; and (4) CCTG was entitled to amend its answer and cross-claim to assert a comparative-fault defense and to assert a claim for negligent misrepresentation against the bank. The Smiths, purchasers of the home, allege the district court erred in granting the bank's motion for summary judgment because (1) the statute of frauds does not apply to the oral agreement between themselves and the bank; (2) the statute of frauds was satisfied; (3) the statute of frauds is inapplicable because they can invoke promissory estoppel; (4) the bank and the Smiths reached an accord and satisfaction; and (5) the bank was required to provide a mortgage satisfaction under Minn.Stat. § 47.208 (1998).

Because we find the statute of frauds is inapplicable to an oral promise to discharge a debt secured by a mortgage and because there is a genuine issue of a material fact as to whether there was an agency relationship between CCTG and the Smiths, we reverse the district court's grant of summary judgment against CCTG and the Smiths. We also conclude the district court abused its discretion in denying CCTG's motion to amend its pleadings with the exception of CCTG's request to add a claim of negligent misrepresentation.

## FACTS

Appellants Michael and Andrea Smith entered into a purchase agreement to buy a newly constructed home from builder-respondent Woodwind Homes, Inc. The purchase agreement provided that Woodwind would convey marketable title on the property. The property, however, was subject to an existing mortgage given by Woodwind to respondent State Bank of

Hamburg. The mortgage secured advances for construction costs. Woodwind's owner, John Dornick, also executed a personal guaranty for the debt.

After the Smiths signed the purchase agreement, CCTG was hired to act as the closer for the Smiths' purchase of the property from Woodwind. There is a dispute as to whom CCTG represented. The Smiths allege CCTG was hired to act as their closer for the transaction and was their agent. The bank contends CCTG represented Woodwind and Stewart Title. CCTG alleges it was an independent contractor, not an agent of the Smiths or the bank.

Janice Adcox, a CCTG employee, was responsible for the closing. About a week before the scheduled closing date, Dornick gave Adcox a statement of the amounts due to subcontractors and suppliers. Howard Reget, the bank's loan officer, also sent a written pay-off letter stating that the amount due the bank on its mortgage was $224,774.88. From this information, it was apparent to Adcox that the funds available from the sale would be insufficient to satisfy the claims of all outstanding subcontractors and suppliers, to pay all closing-related costs, and to satisfy the bank's construction mortgage.

Adcox, therefore, called Reget several days before the closing. In her deposition testimony, Adcox recalled that Reget told her that she should pay the subcontractors and send the remaining funds to the bank. Adcox stated that Reget told her that he would provide a satisfaction of the construction mortgage when he returned from vacation and would look to Dornick for the remaining balance.

Reget's deposition testimony and his affidavit accompanying the bank's motion for summary judgment differ from Adcox's testimony. Reget stated he was contacted by Adcox prior to closing and told her to send the available proceeds of approximately $131,000 to the bank, but he did not agree to issue a satisfaction of the construction mortgage in return for a partial payment.

After the closing, Adcox sent a check in the amount of $131,281.93 to the bank. The check stub had the word "payoff" lined out and the word "payment" inserted. Along with the check, Adcox forwarded a letter to the bank that stated:

> Please forward the mortgage satisfaction and the mortgagee's duplicate certificate, if applicable, to the address below as soon as possible.

Reget refused to send the satisfaction.

Approximately three months after closing, Reget had Dornick execute a new note in an amount that represented the difference between the payoff sum and the money received from the Smiths. The bank also completed a receipt in connection with the construction loan. The transaction code on the receipt indicates "loan payoff in full." The bank's own records reflect the construction loan balance as zero following the closing. Further, the bank's accounting records show that the loan was "renewed" following the closing by virtue of the personal unsecured note executed by Dornick. The amount of principal and interest paid on the construction loan receipt matches the amount of the new unsecured note signed by Dornick.

Reget acknowledged that the bank looked to payment from Dornick for satisfaction of the outstanding loan up until the time it instituted foreclosure. In December 1997, the bank commenced foreclosure proceedings on its mortgage. The Smiths and the First National Bank of Chaska, their mortgage lender, obtained a temporary injunction stopping the foreclosure and sued Woodwind, CCTG, and the bank.

The Smiths asserted claims of breach of contract, promissory estoppel, accord and satisfaction, and violation of Minn.Stat. § 47.208 (1998) against the bank. The Smiths also asserted claims of breach of contract, promissory estoppel, and negligence against CCTG. CCTG and the bank filed cross-claims against each other for contribution or indemnity. The bank then moved for summary judgment seeking to dismiss all of the Smiths' claims against it.

The Smiths also brought a motion for summary judgment to dismiss the bank's counterclaim for personal liability against them.

At the summary judgment hearing, the bank orally moved to dismiss the claims made by CCTG as well as the claims made by the Smiths. The district court granted summary judgment in favor of the bank on all of the Smiths' claims. The district court made no ruling on the Smiths' motion for summary judgment, and its ruling with regard to the cross-claim brought by CCTG against the bank was unclear. The district court also failed to include the required language from Minn. R. Civ. P. 54.02 in its initial order of January 14, 1999.

CCTG, therefore, filed a motion for reconsideration and a motion to amend its pleadings. The district court vacated its previous order and issued a new order for summary judgment dismissing all claims brought by both the Smiths and CCTG against the bank and denied CCTG's motion to amend its pleadings. The new order also granted summary judgment in favor of the Smiths on the bank's counterclaim.

The Smiths and Woodwind filed the instant appeals.

## ISSUES

1. Did the district court make impermissible factual determinations?

2. Does the statute of frauds bar an oral promise to provide a satisfaction of a mortgage?

3. Is there a genuine issue of material fact as to whether an agency relationship existed between the Smiths and Adcox?

4. Did the district court abuse its discretion by denying CCTG's motion to amend its pleadings to assert new claims?

## ANALYSIS

### I. Summary Judgment

On appeal from summary judgment, this court determines whether there are any issues of genuine material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990); *see also* Minn. R. Civ. P. 56.03. This court views the evidence in the light most favorable to the party opposing the motion. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). The burden is on the moving party to show the absence of any genuine issue of material fact. Minn. R. Civ. P. 56.03; *Bixler by Bixler v. J.C. Penney Co.,* 376 N.W.2d 209, 215 (Minn.1985).

### II. Findings of Fact

■ CCTG contends that the district court inappropriately made findings of fact in this summary judgment motion and cites to the following statements in the district court's memorandum:

> Plaintiffs in this action have a very difficult task: to convince a reasonable judge or jury that a banker would give up a first mortgage on a valuable parcel of real estate and agree to seek payment from a financially troubled developer.
>
> \* \* \* \*
>
> [T]he only support for Plaintiffs' contention is the closer's equivocal affidavit about a conversation she had with the Bank's president. Even if the closer's recollection of the conversation is accurate two years after it occurred, Plaintiffs cannot prevail against the Bank on any of their theories because their claims are barred by the statute of frauds.
>
> \* \* \* \*
>
> Ms. Adcox did not obtain any statement in writing from Mr. Reget, because there never was an agreement to satisfy the mortgage. This explanation certainly makes more sense than the Bank agreeing to lose $100,000, when its position was superior to the mechanic's lienholders who were paid first.

\* \* \* \*

Looking to Mr. Dornick to pay the balance does not imply that the bank would not look to the mortgage as well. The fact that the Bank looked to every avenue to pay off its loan is far more likely than the scenario proposed by CCTG and the Smiths.

■ We agree that the findings impermissibly weigh disputed facts. The question of whether Reget promised to send a mortgage satisfaction in exchange for partial payment and to look to Dornick for the shortfall is purely factual and is the heart of this case. The issue of whether the testimony of Reget is more believable than Adcox belongs to the trier of fact. *See DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn.1997) (holding on a motion for summary judgment, the court may not make factual findings that require it to *weigh* the evidence).

### III. Statute of Frauds

■ The district court found the Smiths' and CCTG's claims were barred by the statute of frauds. The purpose of the statute of frauds is to "defend against frauds and perjuries by denying force to oral contracts of certain types which are peculiarly adaptable to those purposes." *In re Guardianship of Huesman*, 354 N.W.2d 860, 863 (Minn.App.1984).

■ "[A]n agreement to give a real estate mortgage is within the statute of frauds." *Hecht v. Anthony*, 204 Minn. 432, 435, 283 N.W. 753, 754 (1939). But because a mortgage is merely incidental to the debt it secures, the mortgagor may be released and discharged from his personal liability for the payment of the debt by a subsequent parol agreement founded on valuable consideration. *First Nat'l Bank v. Gallagher*, 119 Minn. 463, 465, 138 N.W. 681, 681–82 (1912).

■ In the instant case, Reget's alleged promise to Adcox was a promise to satisfy a debt, not a promise conveying an interest in land. As such, it is not governed by the statute of frauds and not required to be in writing. The Smiths' and CCTG's claims against the bank are not, therefore, barred by the statute of frauds.[1] *See id.* at 466, 138 N.W. at 682 (holding mortgagor may be released from his liability for the mortgage debt by a subsequent oral agreement with the mortgagee); *Riley v. Atherton*, 185 Ark. 425, 47 S.W.2d 568, 568 (1932) (holding "a mortgage is merely a security for a debt and the property may be released from the mortgage by an oral agreement"); 72 Am.Jur.2d Statute of Frauds § 91 (1974) (stating an agreement to "release or discharge[ ] a mortgage, and the discharge of the mortgagor from personal liability, are not within the statute of frauds"). Accordingly, the district court erred in granting summary judgment based on the statute of frauds.

### IV. Agency

■ The district court also granted summary judgment against the Smiths because they failed to demonstrate that an agency relationship existed between themselves and Adcox. Whether an agency relationship exists is generally a question of fact unless the evidence is conclusive one way or the other. *Dalager v. Montgomery Ward & Co.*, 350 N.W.2d 391, 394 (Minn.App.1984) (citation omitted).

■ The Smiths contend Adcox acted as their agent for purposes of the closing because they paid CCTG a closing fee. CCTG, however, contends it was an independent contractor and was not an agent of either the Smiths or the bank. In her deposition testimony, Adcox stated Woodwind hired CCTG to handle the "seller's side" of the closing. In light of these conflicting contentions and the lack of evidence regarding the agency relationship, we conclude that summary judgment is inappropriate. *See PMH Properties v.*

---

1. We note that in order to establish an oral contract with the bank discharging their liability, the Smiths must first demonstrate an agency relationship with CCTG.

*Nichols,* 263 N.W.2d 799, 803 (Minn.1978) (stating "when the evidence is conflicting, whether an agency relation exists presents a question of fact for the trier of fact") (citations omitted); *see also Donnay v. Boulware,* 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966) (holding summary judgment "should be employed only where it is perfectly clear that no issue of fact is involved, and that it is not desirable nor necessary to inquire into facts which might clarify the application of the law").

## V. Amendment of Complaint

■ CCTG contends the district court abused its discretion when it refused to allow CCTG to amend its pleadings to: (1) include its cross-claim against the bank in its answer to the Smiths' complaint; (2) insert the defense of comparative fault in its answer to the Smiths' complaint and its cross-claim against the bank; and (3) add a claim for negligent misrepresentation against the bank. CCTG argues that the proposed amendments encompass issues that are already a part of the case and although not specifically pleaded are present in their answer to the Smiths' complaint and their cross-claim against the bank. The district court determined amending the pleadings would prejudice the bank. It also found CCTG's new claim of negligent misrepresentation could not survive summary judgment.

■ After a response has been filed, a party may amend its complaint only with the consent of the adverse party or by leave of the court. Minn. R. Civ. P. 15.01. "The decision to allow a party to amend its complaint after responsive pleading has been made lies within the sound discretion of the [district] court." *Wessin v. Archives Corp.,* 592 N.W.2d 460, 468 (Minn. 1999) (citation omitted).

The district court should liberally grant motions to amend when justice requires and doing so will not result in prejudice to the adverse party. Minn. R. Civ. P. 15.01; *Fabio,* 504 N.W.2d at 761. Under this standard, CCTG should have been allowed

to amend its answer to include its cross-claim against the bank and to insert a defense of comparative fault in its answer and cross-claim. These claims, although not specifically pleaded, are essentially present in CCTG's answer to the Smiths' complaint and their cross-claim against the bank. Moreover, the Smiths and the bank have alleged CCTG's negligence. Thus, neither the Smiths nor the bank would be unduly prejudiced by the inclusion of these claims.

■ Finally, we conclude the district court did not err in denying CCTG's motion to add a claim of negligent misrepresentation. Although motions to amend should be freely granted, such amendments "may properly be denied when the additional alleged claim cannot be maintained." *Hunt v. University of Minnesota,* 465 N.W.2d 88, 95 (Minn.App.1991) (citation omitted). The district court correctly determined CCTG's negligent misrepresentation claim would not withstand summary judgment.

■ An essential element of negligent misrepresentation is that the alleged misrepresenter owes a duty of care to the person to whom they are providing information. *Safeco Ins. Co. v. Dain Bosworth, Inc.,* 531 N.W.2d 867, 870 (Minn.App.1995), *review denied* (Minn. July 20, 1995). A duty of care arises when one making representations is

> supplying information for the guidance of others in the course of a transaction in which one has a pecuniary interest, or in the course of one's business, profession or employment.

*Id.* But, where "adversarial parties negotiate at arm's length, there is no duty imposed such that a party could be liable for negligent misrepresentations." *Id.* at 871.

■ Here, the bank was not supplying guidance or advice to CCTG; rather, it was engaged in an arm's-length commercial transaction. The bank and CCTG were negotiating the terms for closing on

the sale of the home and repaying the outstanding construction mortgage and subcontractors' liens. Both parties were experienced at closing real-estate transactions and CCTG has not demonstrated any special relationship between them indicating they were anything other than sophisticated equals negotiating a business transaction. Thus, we conclude as a matter of law that CCTG has not demonstrated that the bank owed it a duty of care and CCTG's motion to amend its complaint to include a claim of negligent misrepresentation was properly denied.

## DECISION

The district court impermissibly weighed disputed facts in its memorandum granting summary judgment. The district court erred in concluding Reget's alleged promise to send a mortgage satisfaction in exchange for partial payment of the mortgage was governed by the statute of frauds. The conflicting claims of the parties and the lack of evidence, created a genuine issue of material fact as to whether Adcox was the Smiths' agent. The district court abused its discretion when it denied CCTG's motion to amend its pleadings to include its cross-claim against the bank and insert the defense of comparative fault because the additional claims were essentially present in the parties' existing pleadings and neither the Smiths nor the bank would be prejudiced. The district court properly denied CCTG's motion to amend its pleadings to add a claim for negligent misrepresentation against the bank where CCTG failed to demonstrate the bank owed it a duty of care.

**Affirmed in part, reversed in part, and remanded.**