BRATVOLD, Judge
Appellant Jeffrey Matejcek (Jeffrey) challenges the district court's decision to grant summary judgment in favor of respondent Bremer Bank, National Association (Bremer Bank or bank) and to direct the entry of a money judgment against Jeffrey and his ex-wife, Kathryn Matejcek (Kathryn), jointly and severally, for amounts due on a defaulted loan that was secured by a motorhome. Jeffrey and Kathryn were joint debtors on the loan and jointly held title to the motorhome. In the Matejceks' dissolution action, the district court awarded Kathryn the motorhome, directed her to sell the motorhome, and required her to deposit the sale proceeds with Bremer Bank. To facilitate Kathryn's sale, Bremer Bank agreed to release its lien on the motorhome upon receipt of the sale proceeds; it also applied the sale proceeds to reduce the amount due on the loan.
*691 Bremer Bank then pursued this breach-of-contract action for the remaining loan balance. While Jeffrey did not dispute either that he is a joint borrower on the defaulted loan or the amount owed on the loan, he objected to the motorhome's sale, contending the price was short of its market value. On appeal, Jeffrey contends that the district court erred in granting summary judgment because Bremer Bank failed to give notice and dispose of the motorhome in a commercially reasonable manner, as a secured party is required to do under Minnesota's version of the Uniform Commercial Code (UCC)-Secured Transactions. Bremer Bank contends that the UCC provisions were not triggered because it did not sell the motorhome.
Because the undisputed facts establish that Bremer Bank did not sell the motorhome, we conclude that the district court correctly determined that Bremer Bank did not dispose of the motorhome, as defined in relevant UCC provisions, when it consented to Kathryn's sale of the motorhome to offset the amount owed on the loan. We also conclude that the district court did not abuse its discretion in denying Jeffrey's request for a continuance to pursue additional discovery. Thus, we affirm the district court's decision.
FACTS
In January 2013, Jeffrey and Kathryn executed, as joint borrowers, a promissory note to Bremer Bank for a loan in the amount of $340,459.04. Jeffrey and Kathryn also executed a separate agreement providing Bremer Bank with a security interest in a 2013 Winnebago Tour motorhome that they jointly purchased with the borrowed money.
In 2016, Jeffrey commenced a marital dissolution action in Rice County. Jeffrey and Kathryn failed to make several monthly loan payments to Bremer Bank. In September 2016, Kathryn informed Jeffrey and Bremer Bank that she wished to sell the motorhome, and had received an offer of approximately $170,000. Jeffrey objected to a sale at $170,000, stating that he believed the motorhome's value was $225,000. In October 2016, Kathryn informed Bremer Bank that she had found a potential buyer for the motorhome at $175,000, and offered to pay the net proceeds to Bremer Bank in exchange for the bank releasing its lien against the motorhome. Jeffrey again objected to selling the motorhome at the proposed price.
At about the same time, Bremer Bank conducted its own valuation analysis of the motorhome, "through information from the National Automobile Dealers Association, which indicated a potential value of $168,700.00-$234,400.00." Bremer Bank concluded that it would incur "at least $25,305.00" in expenses should it repossess, hold, and sell the motorhome, resulting in a net value to Bremer Bank of "$143,395.00-$199,240.00." Bremer Bank deemed $175,000 to be "a very good recovery," and informed Kathryn that it would agree to this sale price.
Kathryn brought a motion in the dissolution action to authorize transfer of the motorhome title to her name alone and to obtain approval of the proposed sale. At the hearing on Kathryn's motion, Jeffrey's attorney stated that Jeffrey did not oppose the transfer. On November 1, 2016, the district court issued an emergency order transferring title of the motorhome from Jeffrey and Kathryn jointly to Kathryn individually. The order directed that Kathryn "shall attempt to sell and shall sell the motorhome in a prompt and prudent manner, acceptable to the secured party (Bremer Bank), and shall pay the net sale proceeds to Bremer Bank, not to exceed the amount actually owing by the parties to Bremer Bank." Finally, the order reserved *692 for future determination which party had liability for any deficiency on the amount owed to Bremer Bank. Separate from the district court proceedings, Bremer Bank informed the Minnesota Department of Public Safety that it consented to the transfer of title to Kathryn individually.
Although the original prospective buyer backed out, Kathryn found another buyer willing to purchase the motorhome at the same price. Kathryn completed the sale and, in November 2016, Bremer Bank received a wire transfer in the amount of $175,000, after which the bank directed release of its lien against the motorhome. Bremer Bank applied $175,000 to the debt obligation, leaving a principal balance of $104,587.56.
Bremer Bank did not receive any further loan payments and filed this breach-of-contract action in Washington County against Jeffrey and Kathryn for the remaining balance of the loan. Kathryn failed to respond to the summons, and the district court entered default judgment against her for the total amount due under the promissory note.
In April 2017, Bremer Bank moved for summary judgment against Jeffrey "for the amounts due and owing under the Note." In support of its motion, Bremer Bank argued that no material facts were in dispute regarding the enforceability of the promissory note or Jeffrey's default under its terms. Jeffrey opposed the motion, claiming there was a genuine issue of material fact regarding who sold the motorhome. In the affidavit filed in support of his opposition, Jeffrey conceded that he executed the loan agreement, but averred that he never agreed to a "short sale" of the motorhome.[1] Jeffrey also attested that Bremer Bank "agreed to allow the sale" of the motorhome. Jeffrey contended that, if he prevailed at trial with a finding that Bremer Bank sold the motorhome, then the bank was not entitled to judgment because it had failed to give him the required statutory notice and failed to sell the motorhome in a commercially reasonable manner, as required by the applicable provisions of the UCC. See Minn. Stat. §§ 336.9-611(b) (2016) (notice to debtor), .9-610(b) (2016) (commercially reasonable disposition). Finally, Jeffrey argued that the district court should not grant summary judgment to Bremer Bank because discovery had not yet been completed, and further discovery would elicit material facts. Jeffrey and his attorney filed affidavits in support of the request for more discovery.
On July 25, 2017, the district court granted Bremer Bank's motion for summary judgment. The district court determined that the statutory provisions cited by Jeffrey did not apply "because the motorhome was sold by Kathryn." The district court noted that it was undisputed that "at no point in time did [Bremer Bank] repossess the motorhome." Thus, the district court concluded there was "no sale giving rise to a notice requirement under Minn. Stat. § 336.9-611." The district court also concluded that additional discovery was "irrelevant" because Bremer Bank had "no role in the sale of the motorhome." The district court entered judgment against Jeffrey in the total amount of $114,723.69, which included outstanding principal, interest, collection costs, attorney fees, and other statutory costs. This appeal follows.
ISSUES
I. Did the district court err in determining that UCC requirements for sale *693 of collateral by a secured party did not apply because Bremer Bank did not sell or dispose of any collateral when it consented to Kathryn's sale of the motorhome?
II. Did the district court abuse its discretion in denying Jeffrey's request to pursue further discovery?
ANALYSIS
I. The district court did not err in determining that there was no genuine issue of material fact regarding whether Bremer Bank sold or disposed of the motorhome.
This court reviews a district court's summary judgment decision de novo. Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC , 790 N.W.2d 167, 170 (Minn. 2010). "In doing so, [appellate courts] determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." Id. A fact is material if its resolution will affect the outcome of the case. O'Malley v. Ulland Bros. , 549 N.W.2d 889, 892 (Minn. 1996). We "view the evidence in the light most favorable to the party against whom summary judgment was granted." STAR Ctrs., Inc. v. Faegre & Benson, L.L.P. , 644 N.W.2d 72, 76-77 (Minn. 2002). This appeal requires application of the UCC, as codified by Minnesota law. Thus, this case also presents a question of statutory interpretation, which is a question of law that receives de novo review. Berglund v. Comm'r of Revenue , 877 N.W.2d 780, 783 (Minn. 2016).
Under the UCC, after a default by a debtor, the secured party and the debtor have enumerated rights as provided by Minn. Stat. §§ 336.9-601 to .9-628 (2016 & Supp. 2017). A secured party's rights after default include collection and enforcement of the debt, repossession of collateral, and disposition of collateral. See Minn. Stat. §§ 336.9-607, .9-609, .9-610. A debtor's rights include notice before disposition of collateral and disposition in a commercially reasonable manner. See Minn. Stat. §§ 336.9-610(b) (commercially reasonable disposition), .9-611(b) (notice), .9-612 (timeliness of notice), .9-613 (contents of notice). The UCC also authorizes various remedies for violations of these provisions, including injunctive relief and damages "in the amount of any loss caused by a failure to comply with this article." Minn. Stat. § 336.9-625(a) - (b).
This case turns on whether Bremer Bank exercised its right to dispose of the motorhome. To resolve the issue, we begin with the relevant statutory provisions. As generally referred to above, a secured party has the right to dispose of collateral: "After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral." Minn. Stat. § 336.9-610(a). "Collateral" includes property subject to a security interest. Minn. Stat. § 336.9-102(a)(12) (2016). The UCC imposes a duty on the secured party to dispose of collateral in a reasonable manner and to provide the debtor with notice: "Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." Minn. Stat. § 336.9-610(b). Additionally, "a secured party that disposes of collateral under section 336.9-610 shall send to the persons specified in subsection (c) a reasonable authenticated notification of disposition." Minn. Stat. § 336.9-611(b). Subsection (c) includes the debtor as a person to be notified. Minn Stat. § 336.9-611(c)(1).
The meaning of "otherwise dispose" in section 336.9-610(a) is central to our analysis. Neither the relevant statutes nor caselaw define what it means to "otherwise *694 dispose" of collateral. "[T]he goal of all statutory interpretation is to ascertain and effectuate the intention of the legislature." Christianson v. Henke , 831 N.W.2d 532, 536 (Minn. 2013) (quotation omitted); see also Minn. Stat. § 645.16 (2016). In doing so, we "construe a statute's words and phrases according to their plain and ordinary meaning." Allan v. R.D. Offutt Co. , 869 N.W.2d 31, 33 (Minn. 2015).
"Otherwise dispose" is the final item in a list of terms that define a secured party's rights to "sell, lease, license, or otherwise dispose" of collateral. Minn. Stat. § 336.9-610(a). Ejusdem generis is latin for "of the same kind;" under the doctrine of ejusdem generis, "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." Roquemore v. State Farm Mut. Auto. Ins. Co. , 610 N.W.2d 694, 696 (Minn. App. 2000) ; see also Minn. Stat. § 645.08(3) (2016) ("[G]eneral words are construed to be restricted in their meaning by preceding particular words...."). In section 336.9-610(a), the phrase "otherwise dispose" is a general term that follows specific terms that give the secured party the right to sell, lease, or license collateral after default.
Other courts have held that the specific terms listed in section 9-610(a) contemplate the secured party entering into a transaction "terminating, altering, suspending, or transferring the rights of possession and ownership that both a debtor and a secured party enjoy." Fodale v. Waste Mgmt. of Mich., Inc. , 271 Mich.App. 11, 718 N.W.2d 827, 835 (2006) (quoting Silverberg v. Colantuno , 991 P.2d 280, 288-89 (Colo. App. 1998) ). Following the doctrine of ejusdem generis, these same courts also concluded that "otherwise dispose" describes a transaction similar to selling, leasing, or licensing. See Fodale , 718 N.W.2d at 835 ; Silverberg , 991 P.2d at 288-89.
We find this caselaw persuasive. Both the Michigan court and the Colorado court analyzed their states' versions of the UCC, which had language almost identical to section 336.9-610(a), and concluded "that 'disposition' upon default was intended to refer to a transfer of some portion of the creditor's interest in the collateral and a transfer of the debtor's interest." Fodale , 718 N.W.2d at 834-35 ; Silverberg , 991 P.2d at 289 (emphasis in original). Although no Minnesota appellate decision has specifically decided the meaning of "otherwise dispose," relevant caselaw recognizing that a secured party has the duty to provide notice and dispose of collateral in a commercially reasonable manner has concerned a secured party that entered into a transaction to sell, lease, or license the collateral.
For example, in Karlstad State Bank v. Fritsche , appellant-cattle-owners defaulted on the loan that they received from respondent-bank to acquire and maintain their cattle herd. 374 N.W.2d 177, 179-80 (Minn. App. 1985). After notifying the parties of its intent to foreclose on the collateral, the bank effectuated the sale of the herd by hiring an auction company, scheduling the sale, receiving appraisals, and completing the sale. Id. at 181. Likewise, in Chemlease Worldwide Inc. v. Brace, Inc. , when the appellant-borrowers defaulted on their loan for computer equipment, respondent-secured-party "undertook steps to repossess the equipment," contacted three potential buyers, agreed upon sale terms, and upon receiving the purchase price, completed the sale, and sent the buyer a bill of sale. 338 N.W.2d 428, 432 (Minn. 1983). The secured parties in Karlstad and Chemlease disposed of the collateral, and thus, were obligated to comply *695 with the UCC requirements to provide notice and complete the sale in a commercially reasonable manner.
We agree with the district court that Bremer Bank did not "dispose of" the motorhome. Bremer Bank did not enter into a transaction to transfer ownership or possession of the motorhome. Kathryn transferred her ownership interest to the buyers of the motorhome. Bremer Bank released its lien on the motorhome after Kathryn transferred title and possession to the buyers and after Bremer Bank received the sale proceeds and applied them to the loan debt. Lien rights are separate from the rights of ownership and possession. See Minn. Stat. § 336.2A-103(1)(r) (2016) (defining lien). Because Bremer Bank did not transfer ownership or possession rights in the motorhome, the bank did not dispose of the motorhome.
Jeffrey argues that Bremer Bank's consent to the motorhome's sale means that it "otherwise disposed" of the motorhome, and thus, it was bound by the UCC's requirements to give notice and dispose of the property in a commercially reasonable manner. Jeffrey contends that Kathryn could not have sold the motorhome without Bremer Bank's consent. But Jeffrey cites no authority to support his position that a secured party's consent to the sale of collateral by a joint debtor is the legal equivalent of a secured party selling, leasing, or licensing collateral.
We find no support for Jeffrey's position. First, Kathryn could have sold the motorhome subject to Bremer Bank's lien. But more fundamentally, Jeffrey's position that Bremer Bank's consent to Kathryn's sale is the same as Bremer Bank selling the motorhome is incorrect because it asks us to effectively add terms to the statute, which we will not do. See Rohmiller v. Hart , 811 N.W.2d 585, 590 (Minn. 2012) ("We cannot add words or meaning to a statute that were intentionally or inadvertently omitted."). Section 336.9-610(a) imposes duties on a secured party that enters into a transaction to "sell, lease, license, or otherwise dispose" of collateral. The statute does not impose duties based on a secured party's consent to a joint debtor's sale and we decline to add words that the legislature has omitted.
In his reply brief, Jeffrey suggests that Kathryn acted on Bremer Bank's behalf as an agent when she sold the motorhome. But Jeffrey did not make this agency argument in his principal brief. "Generally, issues not raised in an appealing party's principal brief cannot be raised in a reply brief and may be considered forfeited." Superior Glass, Inc. v. Johnson , 896 N.W.2d 137, 142 (Minn. App. 2017). In addition, Jeffrey did not raise this issue to the district court, and therefore, it is not properly before this court. Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988) (holding that appellate courts review "only those issues that the record shows were presented and considered by the trial court in deciding the matter before it"). Regardless, Kathryn approached Bremer Bank with the idea of selling the motorhome, Kathryn obtained a court order authorizing the transfer of title to her individually and approving the sale, and Kathryn completed the sale. There is no record evidence that Bremer Bank exercised any control over Kathryn, which is necessary to prove a principal-agent relationship. See Jurek v. Thompson , 308 Minn. 191, 199 n.5, 241 N.W.2d 788, 792 n.5 (1976) (holding that a principal "retains some right of control" over an agent).
Bremer Bank asks us to rule that, because the bank did not repossess the motorhome as defined by Minn. Stat. § 336.9-609(a), the bank cannot have sold or otherwise disposed of the motorhome.
*696 Succinctly stated, Bremer argues "[w]ithout repossession, particularly of a large vehicle such as the motorhome, disposition is impossible." As previously mentioned, a secured party after default has the right to take possession of collateral. Minn. Stat. § 336.9-609(a)(1).[2] In its summary judgment decision, the district court stated that Bremer Bank did not repossess the motorhome and this determination is not disputed by Jeffrey on appeal. We conclude that, while it is undisputed that Bremer Bank did not repossess the motorhome and this was a relevant fact supporting the district court's decision, we do not need to decide whether repossession is necessary before a secured party may dispose of collateral.
We hold that a secured party on a defaulted loan does not dispose of collateral under section 336.9-610(a) by consenting to a joint borrower's sale of collateral. We also conclude that Bremer Bank did not dispose of the motorhome when the bank consented to Kathryn's sale of the motorhome; therefore, the bank did not need to comply with UCC requirements for a secured party's disposition of collateral.
II. The district court did not abuse its discretion in denying Jeffrey's request to pursue additional discovery.
In the alternative, Jeffrey argues that additional discovery would have uncovered material facts to support his claim that Bremer Bank sold the motorhome. "A district court's decision to deny a motion for a continuance to conduct discovery is reviewed under an abuse-of-discretion standard." Lewis v. St. Cloud State Univ. , 693 N.W.2d 466, 473 (Minn. App. 2005), review denied (Minn. June 14, 2005).
The district court has discretion, as is just, to order additional discovery should the party opposing summary judgment submit an affidavit stating why further discovery is necessary to justify the party's opposition. Minn. R. Civ. P. 56.06. An affidavit filed in support of a request for additional time to conduct discovery, when a summary judgment motion is challenged, " 'must be specific about the evidence expected, the source of discovery necessary to obtain the evidence, and the reasons for the failure to complete discovery to date.' " City of Maple Grove v. Marketline Constr. Capital, LLC , 802 N.W.2d 809, 818 (Minn. App. 2011) (quoting All. for Metro. Stability v. Metro. Council , 671 N.W.2d 905, 919 (Minn. App. 2003) ). If the party has been diligent in obtaining or seeking discovery prior to its rule 56.06 motion, and seeks more discovery in good faith, rather than a mere fishing expedition, a continuance should be liberally granted. All. for Metro. Stability , 671 N.W.2d at 919.
In support of his rule 56.06 request for more discovery, Jeffrey's attorney attested to the written discovery that had been completed, asserted due diligence, and contended that more discovery was needed to "resolve certain unanswered questions as set forth" in Jeffrey's affidavit. Jeffrey's affidavit stated that he was entitled to discovery regarding Bremer Bank's knowledge of his "hostile relationship" with Kathryn and his opposition to the motorhome sale, the reasonable value of the motorhome, and whether the motorhome's *697 sale was commercially reasonable "at the price in question."
On appeal, Jeffrey argues that the district court abused its discretion in denying his request. Bremer Bank responds that these declarations "fail to specifically point to discoverable evidence that would alter the outcome of this action," namely whether Bremer Bank's conduct subjects it to the UCC's requirements. We agree. While Jeffrey proposed discovery that might yield relevant evidence about the commercial reasonableness of the motorhome sale, that evidence is not relevant to the genuine issue: whether Bremer Bank disposed of the motorhome as defined by Minn. Stat. § 336.9-610(a). Because the desired discovery was irrelevant to the genuine issue on summary judgment, the district court did not abuse its discretion in denying Jeffrey's request. See Marketline Constr. Capital, LLC , 802 N.W.2d at 818-19 (concluding "that the district court did not abuse its discretion in denying the motion for a continuance" when the "information sought was not relevant to the question" at summary judgment).
DECISION
Bremer Bank did not transfer ownership or possession of the motorhome by selling, leasing, licensing, or otherwise disposing of collateral, as defined in Minn. Stat. § 336.9-610(a). Bremer Bank's consent to Kathryn's sale of the motorhome did not mean that Bremer Bank "otherwise dispos[ed] of" the motorhome. Thus, because there was no sale of collateral by a secured party giving rise to the UCC's requirements for notice and a commercially reasonable disposition, and because the district court did not abuse its discretion in denying Jeffrey's request for additional discovery, we affirm the district court's grant of summary judgment in favor of Bremer Bank.
Affirmed.

Although Jeffrey admitted that his attorney informed the dissolution court that "I did not oppose the transfer of ownership," he also asserted that "this was not true" and he had discharged his attorney for his "unilateral actions."

A secured party has repossessed collateral when "a repossession agent has gained sufficient dominion over collateral to control it." Thompson v. First State Bank of Fertile , 709 N.W.2d 307, 311 (Minn. App. 2006) (quotation omitted), review denied (Minn. Apr. 18, 2006). In Thompson , we concluded that the agent repossessed Thompson's vehicle when the vehicle's rear wheels were lifted off the ground by the agent's tow truck. Id .