*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1952**

ROA Rochester,
Appellant,

vs.

City of Byron,
Respondent.

**Filed June 24, 2024**
**Reversed and remanded**
**Connolly, Judge**

Olmsted County District Court
File No. 55-CV-22-5733

Mark R. Bradford, Elizabeth Euller, Bradford Andresen Norrie & Camarotto, Bloomington, Minnesota; and

Benjamin D. McAninch, Blethen Berens, Mankato, Minnesota (for appellant)

Melanie J. Leth, Weber, Leth & Woessner, PLC, Dodge Center, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Bratvold, Judge; and Jesson, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

Appellant challenges the summary-judgment dismissal of its claims against respondent, arguing that the district court (1) erred in determining that respondent is a bona fide purchaser, (2) erred in applying the doctrine of unclean hands, and (3) abused its discretion in granting summary judgment without first resolving appellant's pending motion to compel discovery.  We reverse and remand.

## FACTS

Appellant ROA Rochester, LLC,[1] is an outdoor-advertising company that previously held two written, but unrecorded, one-year leases with Flanco, LLC to place advertisement billboards on Flanco's property in Byron, Minnesota (the property).  In 2018 Flanco's owner died, and ownership of the property passed to the owner's son, Steven Flanagan.  Flanagan tried unsuccessfully to sell the property which had an appraised value of $750,000 with an additional $50,000 of value associated with appellant's billboards.  In February and March 2021, appellant proposed extending its one-year leases to ten-year leases.  Flanagan at first hesitated to sign new leases because he still intended to sell the property.

On April 21, 2021, appellant reached an agreement with Flanagan, who executed two ten-year leases with retroactive start dates of September 1, 2020.  The leases each include an addendum which provides:

---

[1] Appellant conducts business under the name Reagan Outdoor Advertising of Rochester.

> If [Flanagan] sells the [p]roperty to a person or entity that is neither related to nor affiliated with [Flanagan] then, in that event, [Flanagan] will give 60 days prior notice and allow [appellant] to negotiate the lease with the buyer. If unable to reach satisfactory terms with the buyer, [appellant] agrees to terminate this [l]ease, effective as of the date of the closing of the sale providing [appellant] a copy of the executed contract evidencing such sale, together with written notice of termination in advance of the closing of the sale.

In early 2021, respondent City of Byron referred Flanagan to a potential buyer. After the proposed deal with the potential buyer failed, the city's administrator and Flanagan discussed the possibility of respondent buying the property. Flanagan represented to respondent that appellant had two one-year leases to the property that would expire at the end of 2021. Flanagan did not disclose the two, ten-year leases. On April 13, 2021, the city administrator moved the city council to "begin the process of purchasing" the property for $600,000. The motion noted that the property's appraisal states, "The contracts for the billboards are with [appellant] and are up at the end of 2021. As part of the sale, [Flanagan] keeps the 2021 rent which is [a] total of $3,000[] annually."

On May 28, 2021, respondent bought the property from Flanagan for the agreed-upon price. The city administrator later testified that she did not "receive any lease from [Flanagan] before moving forward with the sale." She also testified that she did not contact appellant before closing. Instead, she relied on Flanagan's verbal representations that the leases would expire at the end of 2021, and Flanagan's signed Affidavit Regarding Seller (affidavit) drafted by respondent's attorney. But contrary to his verbal representations, Flanagan stated in his affidavit that, "There are no unrecorded contracts, leases, easements,

3

or other agreements or interests relating to [the property] except as stated herein[.]" The affidavit did not disclose any of appellant's leases.

On June 1, 2021, Flanagan emailed appellant for the first time regarding the sale of the property. On July 30, 2021, appellant sent copies of the ten-year leases to respondent. At first, the parties discussed honoring appellant's leases. But in September 2021, respondent informed appellant that it was not bound by the leases because Flanagan failed to disclose them, and that appellant needed to remove its billboards from the property before the end of the year.

Appellant sued respondent to enforce its rights to the property under the ten-year leases. Respondent denied liability and asserted that it was a bona fide purchaser. Before the close of discovery, respondent moved for summary judgment, arguing that it was a bona fide purchaser because it was not on notice of the ten-year leases. Appellant opposed the motion, asserting that respondent knew that appellant had an interest in the property and failed to contact appellant to confirm the extent of that interest. Appellant also requested that the referee decide its pending motion to compel depositions of certain city council members and respondent's attorney before ruling on summary judgment.

On October 24, 2024, the referee issued its decision and concluded that respondent was a bona fide purchaser because respondent "did not have any actual knowledge of facts that would lead it to further inquire about the ten-year leases between Flanagan and [appellant]" before closing on the property. The referee disagreed with appellant that respondent was required to request copies of the one-year leases from appellant before closing because Flanagan consistently represented to respondent that "the one-year leases

4

would remain and there is no evidence presented that, even if the one-year leases were disclosed to [respondent] prior to closing, there would be information presented in those one-year leases that would require [respondent] to further inquire into the ten-year leases."

The referee also granted summary judgment for respondent under the doctrine of unclean hands, finding that appellant sought to induce Flanagan not to disclose the ten-year leases to respondent. As a result, the referee denied appellant's pending motion to compel discovery without addressing its merits. The district court adopted the referee's findings and dismissed appellant's complaint.

This appeal follows.

**DECISION**

We review a district court's "grant of summary judgment de novo to determine whether there are genuine issues of material fact and whether the district court erred in its application of the law." *Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 628 (Minn. 2017) (quotation omitted); *see* Minn. R. Civ. P. 56.01. A material fact is one that will affect the outcome or result of the case. *Westfield Ins. Co. v. Wensmann, Inc.*, 840 N.W.2d 438, 450 (Minn. App. 2013), *rev. denied* (Minn. Feb. 26, 2014). Appellate courts "view the evidence in the light most favorable to the party against whom judgment was granted." *Fletcher Props., Inc. v. City of Minneapolis*, 947 N.W.2d 1, 9 (Minn. 2020) (quotation omitted). Summary judgment is inappropriate when reasonable minds could reach different conclusions based on the evidence presented. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn. 1997).

Appellant challenges the summary-judgment dismissal of its claims against respondent, arguing that the district court (1) erred in determining that respondent is a bona fide purchaser, (2) erred in applying the doctrine of unclean hands, and (3) abused its discretion in granting summary judgment without first resolving appellant's pending motion to compel discovery. We address each argument in turn.

## I.      The district court erred in determining that respondent is a bona fide purchaser.

Appellant challenges the district court's determination that respondent is a bona fide purchaser protected by the Minnesota recording act and therefore not bound by appellant's ten-year leases. The Minnesota recording act provides, in part:

> Every conveyance of real estate shall be recorded in the office of the county recorder of the county where such real estate is situated; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part thereof, whose conveyance is first duly recorded, and as against any attachment levied thereon or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record prior to the recording of such conveyance.

Minn. Stat. § 507.34 (2022). The term "conveyance" includes written leases for a term greater than three years. Minn. Stat. § 507.01 (2022). Because appellant's written, ten-year leases are conveyances, the recording act applies here.

The language of the recording act makes Minnesota a race-notice jurisdiction, which means that a purchaser in good faith, or "a bona fide purchaser[,] who records first obtains rights to the property which are superior to a prior purchaser who failed to record." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 524 (Minn. 1990). A "bona fide

6

purchaser is one who provides valuable consideration without actual, constructive, or implied notice of others' inconsistent outstanding rights." *Wash. Mut. Bank, F.A. v. Elfelt*, 756 N.W.2d 501, 506 (Minn. App. 2008), *rev. denied* (Minn. Dec. 16, 2008). Purchasers with any such knowledge are not protected under the recording act. *In re Ocwen Fin. Servs., Inc.*, 649 N.W.2d 854, 857 (Minn. App. 2002), *rev. denied* (Minn. Nov. 19, 2002).

On appeal, the parties dispute only whether respondent had implied notice of appellant's ten-year leases. A purchaser has implied notice when they have "actual knowledge of facts which would put one on further inquiry." *Miller v. Hennen*, 438 N.W.2d 366, 370 (Minn. 1989) (quotation omitted). If a purchaser has notice that a third party has property rights, they have a duty to inquire into those rights "and [are] chargeable with notice of all facts which such inquiry would disclose," meaning a party may lose protection under the recording act based on those discoverable facts. *Claflin v. Com. State Bank of Two Harbors*, 487 N.W.2d 242, 248 (Minn. App. 1992), *rev. denied* (Minn. Aug. 4, 1992). The party seeking protection under the recording act has the burden of proving they are a bona fide purchaser. *Miller*, 438 N.W.2d at 369.

The parties disagree on the level of inquiry required of a subsequent purchaser, once they are on implied notice of a third party's rights in property, to claim bona-fide-purchaser status and receive protection under the recording act. Appellant argues that respondent's reliance on Flanagan's verbal representations did not confer bona-fide-purchaser status because respondent needed to contact appellant about the interest it held in the property. Respondent counters that, based on Flanagan's verbal representations, and his signed

affidavit, it had implied notice of only the one-year leases, and that there were no other facts that put it on notice to further inquire about the ten-year leases.

Appellant relies largely on *Bergstrom v. Johnson*, 126 N.W. 899 (Minn. 1910), for the proposition that a party may not claim bona-fide-purchaser status by relying only on the seller's representations of a third party's existing property interest. Instead, appellant argues that the purchaser must contact the third party to investigate the nature and extent of that third party's interest. We agree.

In *Bergstrom*, a timber company held an unrecorded permit to enter and cut timber on the seller's property until September 1, 1907, with an option to extend the permit for another year. 126 N.W. at 899. The seller later sold the property to a buyer pursuant to a deed which noted that the conveyance was subject to the timber permit. *Id.* at 899-900. The permit was never recorded and the deed erroneously stated that the permit expired on May 1, 1907. *Id.* When the timber company removed timber from the buyer's property after May 1, the buyer sued the company to recover the timber costs. *Id.* The buyer asserted that it was a bona fide purchaser and that the permit was unenforceable after May 1 because it reasonably relied on the expiration date included in the deed provided by the seller and the seller's verbal representations of the same. *Id.* at 900. The Minnesota supreme court disagreed:

> No person can claim the position of bona fide purchaser of property, when he is informed before making the purchase that a third person has *some* title or interest adverse to the grantor. If he is informed of an outstanding claim, he is under legal obligation to investigate and inquire into the merits, and, failing to do so, is not a purchaser in good faith, within the meaning of the law, if such outstanding claim or title be valid.

8

*Id.* (emphasis added).

Our supreme court reasoned that, because the buyer knew of the outstanding permit, it was on notice of all facts which further inquiry would have disclosed. *Id.* This conferred on the buyer a duty to ascertain the identity of the third party and the terms of the permit as understood by the third party. *Id.* at 899. The supreme court emphasized that the buyer's reliance on the verbal statements of the seller as to the terms of the permit were "not the prudent inquiry required of a bona fide purchaser." *Id.* at 901.

The facts here are not fundamentally different from those in *Bergstrom*. Respondent was on implied notice that appellant had an interest in Flanagan's property because Flanagan verbally represented that the one-year leases existed and the property appraisal memorialized the one-year leases' existence. That respondent was not on notice of the then-applicable ten-year leases is irrelevant when it had notice that appellant possessed some outstanding interest in the property. Accordingly, respondent's knowledge was enough to trigger its duty to further inquire of appellant. *See id.* at 900-01 (disagreeing with buyer that relying on terms of the permit as recited in the deed provided by the seller and the seller's verbal representations was enough to satisfy a bona-fide-purchaser's duty to inquire).

Based on the evidence presented, it is reasonable to conclude that respondent's duty to inquire was not satisfied here. When respondent's city administrator was asked, "Did you receive any lease from [Flanagan] before moving forward with the sale?" she testified, "No." And when asked whether it was true that "at no time did you contact [appellant] to

9

get copies of the[] leases or contracts[,]" the city administrator testified, "Correct." Because *Bergstrom* is still good law today, as it was in 1910, we agree with appellant that the district court's focus on the information that respondent received from Flanagan is legal error. Respondent failed to establish for purposes of summary judgment that it conducted the proper inquiry into appellant's rights in the property that would have conferred bona-fide-purchaser status.

Respondent agrees that relying solely on the seller's representations about a third party's rights in property cannot satisfy a purchaser's duty to inquire; however, respondent also speculates that, had the buyer in *Bergstrom* requested and reviewed a copy of the permit, no matter who provided it, the buyer would have satisfied its duty to inquire. Based on this reading of *Bergstrom*, respondent argues that it satisfied its duty when its city administrator "exercised ordinary diligence in requesting and reviewing copies of the leases."

We are not persuaded. Respondent's argument is contrary to the city administrator's testimony that she did not receive or review any lease from Flanagan. And even if she had done so, respondent's argument relies on facts not present in *Bergstrom*. Instead, *Bergstrom* instructs that a buyer who has notice of a third party's outstanding rights in property must "ascertain[] the name of the [third party], and learn[] from him all the facts." *Id.* at 899. That did not happen here.

Appellant also relies on *Claflin* for the simple proposition that, consistent with *Bergstrom*, a party seeking bona-fide-purchaser status must inquire of "the person in

10

*possession* [of the property]; inquiry of the [seller], who may have reason to conceal the truth, is not sufficient." 487 N.W.2d at 248. Respondent argues that *Claflin* is inapt.

In *Claflin*, appellant quitclaimed her property to her son with the understanding that a promissory note permitted her to live on the property. *Id.* at 244-45. Although the deed was properly recorded, the note was not. *Id.* at 245. When the son conveyed the property back to appellant, the bank elected to accelerate the mortgage payment under the son's loan's due-on-sale clause. *Id.* at 246. When appellant sued to declare the mortgage invalid, the bank argued that it had reasonably relied on the son's statements and the recorded deed, and that it had no duty to further inquire into appellant's interest before granting the loan to her son. *Id.* at 246-48. This court disagreed, holding that, because appellant was a "grantor-in-possession" of the property, the bank had notice and a duty to inquire of appellant about her rights to the property, and the bank was not relieved of that duty based on appellant's son's representations. *Id.* at 249.

Respondent argues that here, unlike in *Claflin*, where the appellant's exclusive possession of the property was visibly inconsistent with the deed, "there was no such inconsistency [in appellant's property interest, the presence of billboards,] to put [respondent] on notice that Flanagan had signed entirely new ten-year leases." While we note that *Claflin* is specific to a *grantor* in possession of property that they once conveyed, we are not convinced by respondent's argument that distinguishing *Claflin* renders *Bergstrom* inapplicable.

The relevant inconsistency here is not whether the presence of the billboards was inconsistent with the existence of one-year leases compared to ten-year leases. The

11

relevant inconsistency, as the city administrator herself recognized but did not investigate, is between Flanagan's verbal representations and those in his affidavit. The former represents that two, one-year leases exist, while the latter represents that no outstanding rights in the property exist. It is therefore immaterial that appellant's visible possession of an interest in the property—the billboards—is not inconsistent with a one-year lease. The apparent inconsistency in Flanagan's representations put respondent on notice and triggered its duty to contact appellant. None of the cases cited by respondent persuade us otherwise.[2]

Appellant next argues that the district court's grant of summary judgment was inappropriate because it resolved disputed fact questions: (1) whether respondent requested copies of *any* of appellant's leases with Flanagan before closing, (2) whether respondent reviewed any leases before closing, and (3) the extent of respondent's knowledge concerning the ten-year leases. All three disputed facts are material to whether respondent was on notice of the ten-year leases and whether respondent satisfied its duty to inquire.

---

[2] Respondent's additional cited caselaw is not on point. *See Nussbaumer v. Fetrow*, 556 N.W.2d 595, 599 (Minn. App. 1996), *rev. denied* (Minn. Feb. 26, 1997) (determining that judgment debtor's physical presence on the property was not inconsistent with the recorded title to constitute *constructive* notice); *Olson v. Olson*, 281 N.W. 367, 368-69 (Minn. 1938) (discussing *constructive* notice); *see also Wiseth v. Thorson*, No. A12-0798, 2013 WL 490782, at *4-5 (Minn. App. Feb. 11, 2013) (determining that buyer did not rely solely on the seller's statements but conducted a thorough investigation, including by reviewing the property contract filed with the appropriate agency and speaking with agency employees), *rev. denied* (Minn. Apr. 16, 2013).

The district court erroneously resolved all three questions in favor of respondent. First, it found that the city administrator "requested written copies of the two billboard leases from Flanagan" despite its separate finding that "Flanagan testified that if anyone [affiliated with respondent] had requested copies of the [l]eases he would have provided them." Because respondent never received any leases, on summary judgment the inference must be drawn in favor of appellant that respondent did not *request*, much less *review*, the leases. Moreover, the city administrator testified that she did not review any leases before closing.

Similarly, Flanagan's testimony that respondent received the one-year leases as part of the appraisal is not controlling because the appraisal only refers to, but does not include, copies of the leases. The city administrator also testified that she was not sure if the city council or respondent's attorney requested or reviewed the leases. Whether Flanagan provided the leases to respondent and whether anyone affiliated with respondent requested or reviewed the leases before closing are material-fact questions that require credibility determinations reserved for the fact-finder. *See Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 423 (Minn. App. 2000) (stating that, at summary judgment, a witness's believability is a question that belongs to the fact-finder).

In sum, whether respondent requested or reviewed the one-year leases, and what it knew of the ten-year leases before closing, presents genuine issues of material fact on which reasonable minds could disagree. When the facts are construed in the light most favorable to appellant, it is reasonable to conclude that respondent knew of the one-year leases, did not request or review any lease, relied solely on Flanagan's representations, and

13

never contacted appellant to discover its rights in the property. And under *Bergstrom*, it is reasonable to conclude that respondent had implied notice of appellant's ten-year leases and failed to prove that it is a bona fide purchaser. Accordingly, the district court erred in granting summary judgment for respondent on that basis.

**II.    The district court erred in granting summary judgment for respondent based on the doctrine of unclean hands.**

Under the doctrine of unclean hands, "[a] party may be denied relief where his conduct has been unconscionable by reason of a bad motive, or where the result induced by his conduct will be unconscionable either in the benefit to himself or the injury to others." *Brown v. Lee*, 859 N.W.2d 836, 843 (Minn. App. 2015) (quotations omitted), *rev. denied* (Minn. May 19, 2015). Apart from finding that respondent is a bona fide purchaser, the district court also determined that summary judgment was proper under the doctrine of unclean hands, reasoning that appellant's (1) "lack of candor," (2) delay in disclosing the lease addenda, and (3) delay in recording the ten-year leases supported its finding that appellant "actively attempted to conceal the underlying 'deal' with Flanagan by misleading and inducing him [not to] disclose the ten-year leases [to respondent]." Appellant argues that the district court's findings are unsupported by the record and improperly resolved disputed questions of fact in favor of respondent. We agree.

First, there is no evidence in the record to establish on summary judgment that appellant misled and induced Flanagan not to disclose the ten-year leases. Respondent points to an email sent from appellant to Flanagan stating that the addenda would give Flanagan "the ability to be out of the equation if/when a sale occurs and puts the onus on

14

[appellant] to be able to keep the [billboards] with the potential buyer." But the addenda also provided that Flanagan was to give appellant 60 days' notice of a sale, even if Flanagan would then be "out of the equation," which Flanagan did not do. And based on his testimony, it was Flanagan's erroneous interpretation of the addenda that led him to conclude "that th[e] lease[s] [were] no good . . . after the sale." Accordingly, the district court erred by inferring appellant's and Flanagan's state of mind and drawing on facts not in the record to grant summary judgment based on the doctrine of unclean hands.

Second, as appellant notes, the doctrine of unclean hands is an affirmative defense that must be pled in a party's responsive pleading. Minn. R. Civ. P. 12.02 (stating that "[e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading"); *Sletten v. Ramsey County*, 675 N.W.2d 291, 299 (Minn. 2004) ("[A] party waives an affirmative defense if it is not included in a responsive pleading."); *Minn.-Iowa Telev. Co. v. Wantonwan T.V. Impr. Ass'n*, 294 N.W.2d 297, 305 (Minn. 1980) (determining that the doctrine of unclean hands is an affirmative defense that must be brought in a party's pleadings). Respondent raised the affirmative defense of unclean hands for the first time in its reply brief on summary judgment. We therefore agree with appellant that it was improper for the district court to grant summary judgment based on this unpled affirmative defense.

III. **The district court abused its discretion in granting summary judgment without deciding appellant's pending motion to compel discovery.**

Finally, appellant contends that the district court erred by ruling on respondent's summary-judgment motion while its motion to compel discovery was pending.

15

Appellant's motion to compel, in effect, sought a continuance. *See* Minn. R. Civ. P. 56.04 (district courts may defer ruling on summary-judgment motions to allow parties to take discovery). Under rule 56.04, continuances should be liberally granted if the nonmoving party "has been diligent in obtaining or seeking discovery prior to its . . . motion, and seeks more discovery in good faith." *Bremer Bank, Nat'l Ass'n v. Matejcek*, 916 N.W.2d 688, 696 (Minn. App. 2018). We review a district court's decision whether to continue a summary-judgment motion for an abuse of discretion. *Id.*

Appellant moved to compel depositions of several city council members to understand respondent's "collective knowledge of the existing leases," and respondent's attorney, to ask about Flanagan's affidavit, which she drafted. The district court denied the motion, reasoning that, "[g]iven that the [district court] has made [a] ruling in favor of [respondent's] [m]otion for [s]ummary [j]udgment, reaching the issue of further discovery disputes would contravene the [district court's] final decision."

Both the city council and respondent's attorney were part of the property sale with Flanagan, and the city administrator could not confirm whether those individuals contacted appellant or reviewed any leases. Based on our review of the record, appellant requested discovery in good faith. We therefore conclude that the district court abused its discretion by granting summary judgment without first resolving appellant's pending motion to compel discovery. *See Pfuhl v. St. Luke's Hosp. Ass'n of Duluth*, No. C0-98-163, 1998 WL 404840, at *2 (Minn. App. July 21, 1998) (concluding that the "district court should have resolved the motion to compel prior to deciding summary judgment" out of fairness to the nonmoving party); *see also* Minn. R. Civ. App. P. 136.01, subd. 1(c) (providing

nonprecedential opinions are not binding authority but may be cited as persuasive authority).

**Reversed and remanded.**